UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | Chapter 7 |
| RICHARD J. SILVA, | ) | Case No.  18-13128 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| PETER B. TROWT and BEVERLY | ) | |
| STORAGE WAREHOUSE & TRAILER | ) | |
| LEASING, INC., | ) | Adv. Proceeding No. |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD J. SILVA, | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF ATTORNEY ERIC R. LEBLANC, ESQ., IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Eric R. LeBlanc, Esq., on oath do depose and state the following:

1.      I am an attorney in good standing and licensed to practice in the Commonwealth

of Massachusetts since 2006.

2.      I was the attorney of record and represented the Plaintiffs in the instant

adversarial proceedings, Peter B. Trowt ("Mr. Trowt") and Beverly Storage Warehouse &

Trailer Leasing, Inc. ("BSWTL")(collectively the "Plaintiffs"), as Plaintiffs in a state court

action (the "State Court Action") against the Defendant in the instant adversarial proceedings,

Richard J. Silva ("Silva"), who was also the Defendant in the State Court Action.  See Trowt v.

<u>Silva</u>, Essex County Superior Court Department, Civil Action No. 2011-01279.  A true and accurate copy of the State Court Action Docket is attached hereto as **Exhibit A**.

3.      In the State Court Action, the Plaintiffs brought claims for Breach of Fiduciary Duty, Conversion, and Breach of Contract against Silva based on Silva's unlawful conduct as an officer of BSWTL, as more thoroughly presented in the Plaintiffs' accompanying Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment.

4.      The Plaintiffs and Silva litigated the State Court Action over five (5) days of jury-waived trial between February 3, 2014 and February 10, 2014.

5.      On October 31, 2014, the Court (Cornetta, J.) in the State Court Action issued its Findings of Fact, Rulings of Law, and Order for Judgment in the State Court Action.  A true and accurate copy of the Findings of Fact, Rulings of Law, and Order for Judgment in the State Court Action is attached hereto as **Exhibit B**.

6.      In its Findings of Fact, Rulings of Law, and Order for Judgment, the Court (Cornetta, J.) entered Judgment in favor of the Plaintiffs on all of their claims against Silva (Breach of Fiduciary Duty, Conversion, and Breach of Contract), based on Silva's conduct as an officer of BSWTL as more thoroughly set out in Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment.  (<u>Id</u>.).

Signed under the pains and penalties of perjury this 20th day of December, 2018.

Eric R. LeBlanc, Esq. (BBO# 666786)

2

# EXHIBIT A

Skip to main content

# 1177CV01279 Trowt, Peter vs. Silva, Richard J et al

Case Type
Equitable Remedies

Case Status
Open

File Date
07/05/2011

DCM Track:
F - Fast Track

Initiating Action:
Other Equity Action

Status Date:
01/30/2017

Case Judge:

Next Event:

| All Information | Party | Judgment | Subsequent Action/Subject | Event | Tickler | Docket | Disposition |

## Party Information

**Trowt, Peter**
- Plaintiff

| Alias | Party Attorney |
|---|---|
| | Attorney |
| | Bennett, Esq., Todd Jarrett |
| | Bar Code |
| | 643185 |
| | Address |
| | Bennett and Belfort PC |
| | 24 Thorndike St |
| | Suite 300 |
| | Cambridge, MA  02141 |
| | Phone Number |
| | (617)577-8800 |

More Party Information

**Silva, Richard J**
- Defendant

| Alias | Party Attorney |
|---|---|
| | Attorney |
| | Grant, Esq., Steven A |
| | Bar Code |
| | 661882 |
| | Address |
| | 200 Walnut St |
| | Suite 2E |
| | Saugus, MA  01906 |
| | Phone Number |
| | (617)262-9464 |
| | Attorney |
| | Pro Se |
| | Bar Code |
| | PROPER |
| | Address |
| | Phone Number |

More Party Information

**Beverly Storage Warehouse & Trailer Leasing Inc**
- Defendant

| Alias | Party Attorney |
|---|---|
| | |

More Party Information

**Trowt Moving and Storage Inc**
- Defendant

| Alias | Attorney |
|-------|----------|
| | • Attorney |
| | • LeBlanc, Esq., Eric R |
| | • Bar Code |
| | • 666786 |
| | • Address |
| | • Bennett & Belfort, P.C. |
| | 24 Thorndike St |
| | Suite 300 |
| | Cambridge, MA  02141 |
| | • Phone Number |
| | • (617)577-8800 |

More Party Information

## Judgments

| Date | Type | Method | For | Against |
|------|------|--------|-----|---------|
| 11/04/2014 | | | | |

## Subsequent Action/Subject

| SA/Subject # | Status Date | Pleading Party | Responding Party | Judgments | Status | Description |
|--------------|-------------|----------------|------------------|-----------|--------|-------------|
| 1 | | Beverly Storage Warehouse & Trailer Leasing Inc | Trowt Moving and Storage Inc | 0 | Open | 3rd Party Complaint |

## Events

| Date | Session | Location | Type | Event Judge | Result |
|------|---------|----------|------|-------------|--------|
| 10/20/2011 04:00 PM | Civil D | | Status Review | | Rescheduled |
| 11/10/2011 02:00 PM | Civil D | | Hearing on Order of Notice | | Canceled |
| 12/07/2011 04:00 PM | Civil D | | Status Review | | Canceled |
| 06/29/2012 04:00 PM | Civil D | | Status Review | | Rescheduled |
| 01/31/2013 04:00 PM | Civil D | | Status Review | | Canceled |
| 02/05/2013 04:00 PM | Civil D | | Status Review | | Canceled |
| 03/12/2013 02:00 PM | Civil D | | Final Pre-Trial Conference | | Held as Scheduled |
| 09/17/2013 02:00 PM | Civil D | | Final Trial Conference | | Rescheduled |
| 09/23/2013 09:00 AM | Civil D | | Jury Trial | | Rescheduled |
| 11/14/2013 02:00 PM | Civil D | | Final Trial Conference | | Rescheduled |
| 11/18/2013 09:00 AM | Civil D | | Jury Trial | | Rescheduled |
| 01/28/2014 02:00 PM | Civil D | | Final Trial Conference | | Not Held |
| 01/28/2014 02:00 PM | Civil C | | Final Trial Conference | | Held as Scheduled |
| 02/03/2014 09:00 AM | Civil C | | Non-Jury Trial | | Held as Scheduled |

| Date | Session | Location | Type | Event Judge | Result |
|------|---------|----------|------|-------------|--------|
| 02/03/2014 09:00 AM | Civil D | | Jury Trial | | Not Held |
| 02/04/2014 09:00 AM | Civil C | | Non-Jury Trial | | Held as Scheduled |
| 02/06/2014 09:00 AM | Civil C | | Non-Jury Trial | | Held as Scheduled |
| 02/07/2014 09:00 AM | Civil C | | Non-Jury Trial | | Held as Scheduled |
| 02/10/2014 09:00 AM | Civil C | | Non-Jury Trial | | Held as Scheduled |
| 02/28/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 04/25/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 05/16/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 05/30/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 06/27/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 08/29/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 09/26/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 10/31/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 11/28/2014 04:00 PM | Civil C | | Status Review | | Canceled |
| 12/10/2014 04:00 PM | Civil C | | Status Review | | Held as Scheduled |
| 12/17/2014 10:00 AM | Civil C | | Hearing on Preliminary Injunction | | Held as Scheduled |
| 12/18/2014 02:00 PM | Civil C | | Post-Judgment Hearing | | Rescheduled |
| 01/07/2015 04:00 PM | Civil C | | Status Review | | Not Held |
| 01/20/2015 02:00 PM | Civil C | | Post-Judgment Hearing | | Rescheduled |
| 01/27/2015 02:00 PM | Civil C | | Post-Judgment Hearing | | Not Held |
| 02/03/2015 02:00 PM | Civil C | | Post-Judgment Hearing | | Held as Scheduled |
| 02/04/2015 04:00 PM | Civil C | | Status Review | | Held as Scheduled |
| 03/04/2015 04:00 PM | Civil C | | Status Review | | Held as Scheduled |
| 04/08/2015 04:00 PM | Civil C | | Status Review | | Held as Scheduled |
| 07/09/2015 02:00 PM | Civil C | LAWRENCE-2nd FL, CR 2 (SC) | Rule 12 Hearing | Cornetta, Hon. Robert A | Held as Scheduled |
| 02/04/2016 02:00 PM | Civil C | | Motion Hearing | | Rescheduled |
| 02/18/2016 02:00 PM | Civil D | | Hearing: Sanctions | | Rescheduled |
| 02/25/2016 02:00 PM | Civil D | LAWRENCE-2nd FL, CR 3 (SC) | Hearing: Sanctions | Wall, Hon. Joshua | Held as Scheduled |
| 11/17/2016 02:00 PM | Civil C | LAWRENCE-2nd FL, CR 3 (SC) | Motion Hearing to Compel | Wall, Hon. Joshua | Held - Under advisement |

| Date | Session | Location | [Event]Type | Event Judge | Result |
|------|---------|----------|-------------|-------------|--------|
| 07/13/2017 02:00 PM | Civil C | LAWRENCE-2nd FL, CR 3 (SC) | Hearing on Contempt | Wall, Hon. Joshua | Rescheduled |
| 09/14/2017 02:00 PM | Civil C | LAWRENCE-2nd FL, CR 3 (SC) | Hearing on Contempt | Wall, Hon. Joshua | Rescheduled |

## Ticklers

| Tickler | Start Date | Due Date | Days Due | Completed Date |
|---------|-----------|----------|----------|----------------|
| Service | 07/05/2011 | 11/30/2011 | 148 | 02/04/2015 |
| Answer | 07/05/2011 | 11/02/2011 | 120 | 02/04/2015 |
| Rule 12/19/20 Served By | 07/05/2011 | 11/02/2011 | 120 | 02/04/2015 |
| Rule 12/19/20 Filed By | 07/05/2011 | 12/02/2011 | 150 | 02/04/2015 |
| Rule 12/19/20 Heard By | 07/05/2011 | 01/01/2012 | 180 | 02/04/2015 |
| Rule 15 Served By | 07/05/2011 | 11/02/2011 | 120 | 02/04/2015 |
| Rule 15 Filed By | 07/05/2011 | 12/02/2011 | 150 | 02/04/2015 |
| Rule 15 Heard By | 07/05/2011 | 01/01/2012 | 180 | 02/04/2015 |
| Discovery | 07/05/2011 | 10/30/2012 | 483 | 02/04/2015 |
| Rule 56 Served By | 07/05/2011 | 12/30/2012 | 544 | 02/04/2015 |
| Rule 56 Filed By | 07/05/2011 | 01/31/2013 | 576 | 02/04/2015 |
| Final Pre-Trial Conference | 07/05/2011 | 03/31/2013 | 635 | 02/04/2015 |
| Judgment | 07/05/2011 | 04/25/2013 | 660 | 02/04/2015 |
| Under Advisement | 07/09/2015 | 08/08/2015 | 30 | 09/03/2015 |
| Under Advisement | 11/17/2016 | 12/17/2016 | 30 | 12/14/2016 |

## Docket Information

| Docket Date | Docket Text | File Ref Nbr. |
|-------------|-------------|---------------|
| 07/05/2011 | Complaint & civil action cover sheet filed | 1 |
| 07/05/2011 | Origin 1, Type D99, Track F. | |
| 09/28/2011 | Plaintiff's MOTION to extend time for service of complaint until 11/30/11 | 2 |
| 09/28/2011 | Motion (P#2) After hearing, ALLOWED (Thomas R. Murtagh, Justice) Notices mailed 9/28/2011 | |
| 09/28/2011 | Plaintiff's MOTION for appointment of special process server Ronald DiGiorgio | 3 |
| 09/28/2011 | Motion (P#3) ALLOWED (Thomas R. Murtagh, Justice) Notice in hand 9/28/11 | |
| 11/07/2011 | Plaintiff's ex parte MOTION for Preliminary Injuction | 4 |
| 11/07/2011 | Notice ORDER issued, hereon returnable at the D on 11/10/2011 to show cause why Preliminary Injunction should not be granted (Murtagh, Justice) | |
| 11/08/2011 | First amended complaint | 5 |
| 11/10/2011 | Joint MOTION for Preliminary Injunction | 6 |
| 11/17/2011 | SERVICE RETURNED (order of notice): Richard J Silva | 7 |
| 11/21/2011 | ORDER for Preliminary Injunction (Thomas R. Murtagh, Justice) | 8 |
| 11/30/2011 | ANSWER: Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc | 9 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 11/30/2011 | COUNTERCLAIM of Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc v Peter Trowt | |
| 12/06/2011 | Amended ANSWER: Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc | 10 |
| 12/06/2011 | COUNTERCLAIM of Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc v Peter Trowt | |
| 12/06/2011 | Complaint of 3d-party Plf Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc v Trowt Moving and Storage Inc along with filing fee in the amt of $240.00. | |
| 01/18/2012 | ANSWER by Peter Trowt to COUNTERCLAIM of Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc | 11 |
| 01/18/2012 | ANSWER by (3d pty def): Trowt Moving and Storage Inc | |
| 02/08/2012 | Affidavit of acceptance of service of Eric R LeBlanc re: (3rd pty summons): Trowt Moving and Storage Inc, service made on 2/2/2012 (in hand/agent/attorney) | 12 |
| 04/18/2012 | Joint MOTION to amend tracking deadlines | 13 |
| 05/01/2012 | Motion (P#13) ALLOWED (Richard E. Welch III, Justice) Notices mailed 5/1/2012 | |
| 02/05/2013 | Notice sent to appear for pre-trial conference on 3/12/2013 | |
| 03/13/2013 | Joint pre-trial memorandum filed | 14 |
| 09/03/2013 | JOINT MOTION to Continue Trial Until November 18, 2013 | 15 |
| 09/09/2013 | Motion (P#15) ALLOWED (Robert L. Ullmann, Justice) Notices mailed 9/9/2013 | |
| 09/09/2013 | Notice sent to appear for trial by jury on 11/18/2013 | |
| 11/01/2013 | Defendant Richard J Silva's MOTION to continue Trial Date | 16 |
| 11/01/2013 | Peter Trowt and Trowt Moving & Storage's Opposition to Defendant's Motion to Continue | 17 |
| 11/05/2013 | Motion (P#16) upon consideration of the motion and opposition to continue the trial is ALLOWED. A new trial date shall issue. Neither party should expect any future motions to continue the trial date to be allowed. (James F. Lang, Justice) Notices mailed 11/5/2013 | |
| 11/05/2013 | Notice sent to appear for trial by jury on 2/3/2013 | |
| 01/29/2014 | Copy of Exhibit A that was inadvertently omitted from Motion to Preclude | 18 |
| 01/29/2014 | Opposition to Motion in Limine filed by Richard J Silva | 19 |
| 01/29/2014 | SUBSTITUTE DOCKET FORM: Plfs motion seeking to preclude defendant's use of expert witness testimony at trial is denied, conditional upon the defendants transmitting forthwith to the plf's counsel the curriculum vital of the proposed expert witness together with a summation of the proposed expert witness's testimony @ trial. This documentation shall be provided to the plf's atty. no later than 11:00 AM, January 31, 2014. Failing the same, the defendants shall be precluded from seeking expert evidence @ trial. (Robert A. Cornetta, Justice) | 20 |
| 01/29/2014 | Defendant-Plaintiff-In-Counterclaim Richard Silva's Trial Witness List, filed in court 1/28/2014Witness list | 21 |
| 01/29/2014 | Witness list of Plaintiff/Defendant In Counterclaim Peter Trowt and Third Party Defendant Trowt Moving and Storage, Inc., filed in court 1/28/2014 | 22 |
| 01/30/2014 | Plaintiff Peter Trowt's MOTION for leave to preclude Defendant's use of expert witness testimony at trial | 23 |
| 02/10/2014 | Joint pre-trial memorandum filed in court 2/3/2014 | 24 |
| 03/03/2014 | Proposed findings of Fact and Conclusions of Law of Plaintiff Peter Trowt and Third Party Defendant, Trowt Moving & Storage, Inc. filed in hand to Essex Superior Court Clerk's Office on 2/28/2014 | 25 |
| 03/03/2014 | Proposed Findings of Fact and Rulings of Law of Richard Silva, filed 02/28/2014 | 26 |

10/31/2014   Docket Text

Docket
Date

27
File
Ref
Nbr.

FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT INTRODUCTION
The plaintiff, Peter Trowt (Trowt), and the defendant, Richard Silva
(Silva), each own a fifty percent interest in Beverly Storage
Warehouse & Trailer Leasing, Inc. (Beverly Storage). This case
involves the breakdown of their business relationship and the alleged
misappropriation of certain Beverly Storage assets. On November 8,
2011, Trowt filed the First Amended Complaint and, on December 5,
2011, Silva filed the Amended Counterclaim and Third Party Claim. In
order to resolve this matter, the court held a five-day jury waived
trial between February 3, 2014 and February 10, 2014. Trowt asserts
claims against Silva, individually, for breach of fiduciary duty
(Count II) and breach of contract (Count III), as well as
derivatively, on behalf of Beverly Storage, for breach of fiduciary
duty (Count I) and conversion (Count IV). He also asserts a claim for
an accounting. Essentially, Trowt argues Silva violated his duty of
utmost good faith and loyalty by misappropriating certain Beverly
Storage assets to his (Trowt s) detriment. Trowt accuses Silva of
three basic categories of misconduct. First, Trowt alleges that,
contrary to their agreement to split profits fifty-fifty, Silva, who
was responsible for all of Beverly Storage s financial matters,
unevenly distributed company profits by paying himself a higher
salary. Second, Trowt claims that Silva siphoned cash from customer
payments meant to be deposited in Beverly Storage s accounts. Third,
Trowt contends Silva misappropriated assets by using company credit
cards to pay for personal items/expenses. At trial, in support of
these claims, Trowt offered the expert testimony of Kathy L. Parker
(Parker), a certified public accountant with a Master of Science in
Taxation. Silva asserts claims against Trowt, individually, for
breach of fiduciary duty (Counterclaim I) and breach of contract
(Counterclaim III), as well as derivatively, on behalf of Beverly
Storage, for breach of fiduciary duty (Counterclaim II). In addition,
Silva asserts a third-party claim against Trowt Moving & Storage,
Inc. (Trowt Moving), which is Trowt s separately owned moving
business, for breach of contract. Basically, Silva claims Trowt
breached his duties of good faith and loyalty and caused Beverly
Storage and thus, him, economic harm by permitting Trowt Moving to
use Beverly Storage s land and facilities without paying rent. At
trial, Silva offered no expert testimony or other evidence sufficient
to support of these claims. In particular, aside from his own
speculations, he offered no evidence describing his measure of
damages. FINDINGS OF FACT Based upon the evidence presented at trial,
including the credible testimony of each party s witnesses and the
various exhibits that were submitted, the court makes the following
findings of fact. The Parties and Relevant Business Entities: Trowt
is an individual residing in Beverly, Massachusetts. At all times
relevant to the current matter, Trowt has owned a fifty percent
interest in Beverly Storage. Silva is an individual residing in
Salem, Massachusetts. At all times pertaining to the current dispute,
Silva has also owned a fifty percent interest in Beverly Storage.
Beverly Storage is a small closely held corporation with a principal
place of business at 145 Rear Hale Street, Beverly, Massachusetts.1
Beverly Storage receives revenue from its customers in two ways: (1)
from the rental of storage rooms at its warehouse in Beverly; and (2)
from the rental of one of approximately forty-two various sized
trailers, which it pays $2,000.00 per month to store at a rental
location in Manchester-by-the-Sea, Massachusetts. Beverly Storage is
named in this suit in order for the parties to obtain requested
derivative relief. Trowt Moving is a business entity formed under the
laws of Massachusetts. It has a principal place of business also
located at 145 Rear Hale Street. Trowt is the sole shareholder and
President of Trowt Moving. Trowt Moving is a moving company that
moves personal items belonging to its customers from one place to
another. In the late 1980s, Silva worked for Trowt Moving. Then, in
1993, Trowt and Silva formed a partnership when each purchased a
fifty percent interest in Beverly Storage. In 1993, Trowt and Silva
also each purchased a fifty percent ownership interest in the land
located at 145 Rear Hale Street, which is currently owned by a realty
trust identified as the 145 Rear Hale Street Realty Trust (the Realty
Trust).2 In 1997, Trowt and Silva formally incorporated Beverly
Storage and each became a fifty percent shareholder. In this case,
Silva claims Trowt Moving unfairly and without compensation made use
of Beverly Storage s land and facilities. The court finds that the
evidence presented at trial demonstrated that there is a symbiotic
relationship between Trowt Moving and Beverly Storage. Even before
Trowt and Silva became partners and shareholders in Beverly Storage,
Trowt Moving and Trowt accounted for the origination of approximately
ninety-five percent of Beverly Storage s customers. To this day,

Trowt and Trowt Moving are still responsible for the origination of a significant portion of Beverly Storage s business. Trowt Moving also provided Beverly Storage with other benefits. For example, Trowt Moving regularly moves and transports trailers belonging to Beverly Storage, which contain goods and property belonging to Beverly Storage s customers, as Beverly Storage does not own its own tractor. In addition, Trowt Moving s employees regularly spend time performing tasks for Beverly Storage, getting customers to sign contracts, answering the office telephone, sending out bills, addressing customer concerns, and collecting certain fees. Beverly Storage does not pay Trowt Moving any money or reimburse it in any way for these tasks. Thus, the court finds that, to the extent that Trowt Moving may have benefited from its relationship with Beverly Storage, Beverly Storage benefited equally from the relationship. TROWT S CLAIMS Beverly Storage Management & Operations: Beverly Storage has only distributed profits in the form of weekly salaries. In 1993, when Trowt and Silva purchased Beverly Storage s assets, they agreed to split all the business profits and losses equally, on a fifty-fifty basis. Later, at some point in 1994, Trowt agreed to allow Silva to collect a higher salary than he (Trowt) was receiving, at a ratio of sixty-five (Silva) to thirty five (Trowt) percent. Nevertheless, thereafter, when Trowt and Silva officially incorporated the business in 1997, they reverted back to their original agreement that all profits and losses would be split on a fifty-fifty basis. From the commencement of Trowt and Silva s partnership in 1993 until some point after the start of this litigation, Silva was responsible for all financial aspects of the company, including, accounts receivable, accounts payable, and vendor payments, as well as other office administration tasks. Silva was the only person at Beverly Storage with access to company passwords, bank accounts, credit cards, and payroll services. Silva was the only person who dealt with Beverly Storage s accountant and was responsible for all the company s accounting functions. Trowt, on the other hand, was responsible for generating business for Beverly Storage, which included providing estimates and maintaining good client relations. Sometime in or about 2006 or 2007, after Silva started his own travel business, Clear Skys Travel (Clear Skys), the division of responsibilities began to shift. Trowt and Trowt Moving employees began assuming some of the office administration tasks Silva had typically completed, as he was no longer at the office on a full-time basis. By the time litigation began in 2011, Silva was, generally, not at Beverly Storage during the company s regular business hours, which required that Trowt or Trowt Moving s employees handle all day-to-day office administration tasks. Later, in or about late 2012, Trowt officially took over handling a majority of the accounts receivable functions and processed a majority of all customer payments. Unequal Salaries: In 1993, when Trowt and Silva purchased Beverly Storage, they agreed to split profits evenly, each receiving an equal salary. At some point in 1994, Silva began receiving a higher salary than Trowt, at a sixty-five to thirty-five percent ratio. Thereafter, following the 1997 incorporation of Beverly Storage, Trowt and Silva agreed to go back to splitting profits on a fifty-fifty basis. By mid to late 1999, Trowt and Silva were receiving equal pay. Sometime in mid to late 2000, Trowt s salary was lowered and profits were being split at a sixty-five to thirty-five percent ratio in Silva s favor. Silva made this change without Trowt s knowledge or consent. From 2006 until November 2011, Silva received a higher salary than Trowt. In fact, between 2006 and late 2011, salaries were split between Trowt and Silva at a seventy-five to twenty-five percent ratio favoring Silva. Trowt never agreed to this salary adjustment and did not discover the seventy-five twenty-five percent split until the latter part of 2010. At that time, Trowt instructed Silva to equalize their salaries, but he (Silva) refused. In fact, Silva, who had sole control of Beverly Storage s payroll, instructed Craig & Withers, Beverly Storage s accountant, to ignore Trowt s demands for equal pay. When Trowt contacted Craig & Withers, he was informed that per Silva s instructions, they could not make any adjustments to his salary. Trowt and Silva s salaries were not equalized until November 2011, when Trowt obtained a preliminary injunction in connection with this case ordering Silva to make their salaries equal. From 2006 to November 2011, Silva received $359,575.00 in salary from Beverly Storage while Trowt received only $141,250.00 in salary from Beverly Storage. Exhibit 17, Parker, Expert Witness Report, October 14, 2013 (hereinafter, the Parker Report). Thus, from 2006 to November 2011, when Trowt and Silva agreed to split profits on a fifty-fifty basis, when salaries were the only form of profit distribution Beverly

12/21/2018                           Case Details - Massachusetts Trial Court 3

Case 18-01168    Doc 9    Filed 12/21/18    Entered 12/21/18 12:10:46    Desc Main
                          Document      Page 11 of 43

| Docket | Docket Text | File |
|--------|-------------|------|
| Date   |             | Ref  |
|        |             | Nbr. |

Storage made, and when Silva was solely responsible for the company s payroll, Silva paid himself $218,325.00 more than he paid Trowt. Id. Siphoning Revenue: In addition to paying himself a higher salary, Silva siphoned revenue and cash from Beverly Storage. Between 2006 and 2011, according to business records, Beverly Storage s revenue remained relatively flat, averaging approximately $200,000.00 per year. The Parker Report. Then, in late 2012, when Trowt took over the accounts receivable, including the responsibility for depositing all customer payments into Beverly Storage s bank account, revenue spiked. Id. In fact, annualizing the total deposits through August 2013, shows a nineteen percent increase in revenue for 2013. Id. During this spike in revenue, Beverly Storage made no operational changes other than the fact that Trowt began handling Beverly Storage s deposits. Being conservative, estimating Silva was skimming only ten percent from Beverly Storage s revenues, there would be an additional $140,815.20 in deposits for the period between January 2006 and December 2011. Id. Silva also used funds from Beverly Storage to put a deposit on land he wished to purchase in Rowley, Massachusetts. Silva s testimony on this issue was contradictory and not credible. First, Silva testified that there was only one piece of land that he wanted to purchase and that the only $5,000.00 check was shredded by the seller s real estate agent. Then, he testified that the $5,000.00 deposit check was returned. When Trowt s attorney showed Silva another $5,000.00 check, written off of Beverly Storage s account, Silva admitted that he had placed a second $5,000.00 deposit on a second piece of land, which was forfeited. Silva also collected cash from Beverly Storage s customers to bring with him on vacation. At trial, Silva s ex-wife, Mary Rees, testified that, prior to scheduled vacation trips, which occurred at least four times per year, Silva would hoard cash (at least $500.00) from Beverly Storage s deposits for his personal use. Misappropriation of Beverly Storage s Assets for Personal Use: Between 2006 and 2011, Silva opened at least five credit cards in Beverly Storage s name. Silva opened all of these credit accounts without informing Trowt of their existence. Silva used Beverly Storage s credit cards for numerous personal purchases including: dating websites, i.e., match.com and singlesnet.com, restaurants, motorcycle stores, Stop & Shop, numerous gas purchases, massage parlors, shoe polish, noise canceling headphones, numerous telephones, and other various purchases unrelated to the warehouse and storage business. Silva made personal use of every credit account he opened in Beverly Storage s name. When questioned about these allegations at trial, Silva had no credible explanation for the various personal charges; he could not recall what was purchased or, for example, credibly explain why Beverly Storage s various credit accounts listed charges for restaurants, massage parlors, grocery stores, etc.3 Silva used at least $104,355.00 worth of Beverly Storage s money for his own personal use. The Parker Report. These personal charges were split into four categories of misappropriation: (1) personal expenses, such as dating websites and department stores; (2) automotive expenses, such gas purchases and automotive repairs; (3) unrelated office supply purchases; and (4) normal but excessive expenses. Id. Parker testified that, in reaching this total, she used conservative estimates and that, if she were able to obtain more credit card records the amount and number of Silva s personal charges would be even greater. The court credits this testimony. Trowt never agreed that Silva could use Beverly Storage s credit accounts for his own personal expenses or for expenses related to Clear Skys. Once this lawsuit began and Beverly Storage s credit accounts were cancelled, all inappropriate and excessive charges stopped. SILVA S COUNTERCLAIMS Permission to Park at 145 Rear Hale Street: Silva seeks $500.00 per week from Trowt Moving as payment for it parking eight pieces of equipment at 145 Rear Hale Street. Trowt Moving has parked its vehicles at 145 Rear Hale Street since 1993. There was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva that Trowt Moving would pay $500.00 per week to park its vehicles at 145 Rear Hale Street. During trial, Silva provided no evidence, aside from his own speculation, as to the reasonable value of the parking spaces Trowt Moving uses. Moreover, the only parking bill Silva presented is dated October 2013, which is two years after litigation commenced. Overnight Storage: Silva seeks overnight storage fees from Trowt Moving for it charging to keep customers goods on its trucks parked at 145 Rear Hale Street for one or two nights when customers need to be out of their old home before they can move into their new home. Silva has known that Trowt Moving charges overnight storage fees since at least 2003. And, there was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva whereby Trowt

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|

Moving agreed to pay Beverly Storage overnight storage fees in these circumstances. At trial, aside from his own speculation, Silva provided no evidence relating to the amount of damage Beverly Storage sustained as a result of Trowt Moving s collection of overnight storage fees.4 Office Space: Silva seeks monthly rental fees from Trowt Moving for its use of office space located at 145 Rear Hale Street. The office, which Trowt Moving uses, was constructed, built, and paid for solely by Trowt Moving. And, there was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva that Trowt would pay for the use of this office space. During trial, Silva provided no evidence, aside from his own speculation, as to what would constitute a reasonable rental fee for the office space Trowt Moving uses. Moreover, the only office rental bill Silva presented is dated November 2011, right around the time Trowt commenced this suit. See Exhibit 22. Miscellaneous Claims:Silva claims that a Trowt Moving employee damaged a trailer belonging to Beverly Storage and that, Trowt Moving refused to pay for the damage. Silva has, however, known about this alleged damage since 2005 and, at trial, he presented no evidence showing the damage included or the cost of repairs. Silva seeks to charge Trowt Moving for storing trailers at the location Beverly Storage rents in Manchester-by-the-Sea. There was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva that Trowt Moving would pay to store its trailers at the Manchester-by-the-Sea location. This practice has been going on since before 2005 and Trowt Moving has never been billed for storing its trailers at the Manchester-by-the-Sea location. Notably, at least one of Trowt Moving s trailers located in Manchester-by-the-Sea is full of goods belonging to a Beverly Storage customer and Beverly Storage receives all storage fees associated with the use of this trailer. Further, Beverly Storage does not own its own tractor, consequently, the only way the trailers belonging to Beverly Storage can be transported to and from Manchester-by-the-Sea is if Trowt Moving uses its tractor to move them. Silva claims Trowt Moving stores various miscellaneous items belonging to it at 145 Rear Hale Street without Beverly Storage s permission. Based on the evidence presented at trial, the court concludes any miscellaneous property Trowt Moving stores at 145 Rear Hale Street is used for both Trowt Moving and Beverly Storage s customers, including the boxes, crates, pallet jack, padding and plastic wrap. The court further concludes that these items are commingled with similar items belonging to Beverly Storage and, thus, the items are not taking up space that Beverly Storage would otherwise be able to rent. RULINGS OF LAW In this case, Trowt asserts individual claims against Silva for breach of fiduciary duty (Count II) and breach of contract (Count III) as well as derivative claims, on behalf of Beverly Storage, for breach of fiduciary duty (Count I) and conversion (Count IV). Meanwhile, Silva asserts individual claims against Trowt for breach of fiduciary duty (Counterclaim I) and breach of contract (Counterclaim III) as well as a derivative claim, on behalf of Beverly Storage, for breach of fiduciary duty (Counterclaim II). In addition, Silva asserts a third-party claim against Trowt Moving for breach of contract. Below, the court addresses each of these claims. I. Breach of Fiduciary Duty (Counts I & II and Counterclaims I & II) In a close corporation, shareholders owe to the other shareholders and the corporation a duty of utmost good faith and loyalty. Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578, 593 (1975), quoting Cardullo v. Landau, 329 Mass. 5, 8 (1952) (internal quotations omitted). Essentially, shareholders of a closely held corporation owe to the business and their fellow shareholders substantially the same fiduciary duty in the operation of the enterprise that partners owe to one another. Id. This requires that the shareholders place the welfare of the business and that of the other shareholders ahead of their own personal interests. Demoulas v. Demoulas Supermarkets, Inc., 421 Mass. 501, 529 (1997). Shareholders in a close corporation are thus not permitted to frustrate the reasonable expectations of the other shareholders with respect to share ownership, such as with regard to the fair distribution of income and assets, shared decision-making, control of the business, and the receipt of fair value for their contributions to the enterprise. See, e.g., Wilkes v. Springside Nursing Home, Inc., 370 Mass. 843, 850 (1976). The law prohibits shareholders in a close corporation from acting out of avarice, expediency or self-interest in derogation of their duty of loyalty to the corporation and its other stockholders. Donahue, 367 Mass. at 593. In the current matter, Trowt and Silva accuse each other of breaching the fiduciary duty that shareholders in a close corporation owe to each other and the corporation. The elements of such a claim are: (1) the existence of a fiduciary duty, based upon

the relationship of the parties; (2) a breach of that duty; (3) damages; and (4) a causal connection between the breach of duty and the damage suffered. Hanover Ins. Co. v. Sutton, 43 Mass. App. Ct. 153, 164 (1989). The determination of whether a breach of fiduciary duty has occurred is a question of law for the court, as is the remedy for such a breach. See Merola v. Exergen Corp., 423 Mass. 461, 461 (1996). It is undisputed that Beverly Storage is a closely held corporation and that, as such, Trowt and Silva owe each other and it a duty of utmost good faith and loyalty. The only questions left for the court to decide are who breached his fiduciary duty and who is entitled to recover damages. Trowt s Claims: Through the evidence presented at trial, Trowt proved, by a preponderance of the evidence, that Silva breached the fiduciary duty he owed him. In particular, Trowt proved the following relevant facts: that, as of 1997, when Beverly Storage was incorporated, he and Silva agreed to split profits on a fifty-fifty basis; that the only way Beverly Storage distributed profits was through the payment of salaries; that Silva was solely responsible for the distribution of profits; and that Silva unilaterally decreased his (Trowt s) share of the profits by decreasing his (Trowt s) salary, and increasing his own salary. In paying himself a higher salary, i.e., splitting profits at a seventy-five to twenty-five percent ratio in his favor, Silva clearly acted out of avarice and self-interest in derogation of the fiduciary duty he owed Trowt. Consequently, Trowt is entitled to judgment in his favor on Count II (breach of fiduciary duty). As no contrary evidence was presented at trial on the issue of damages, as a starting point, the court accepts the figures set forth in The Parker Report. From 2006 to November 2011, contrary to their agreement to split profits, i.e., to split salaries, on a fifty-fifty basis, Silva paid himself $359,575.00 in salary while he paid Trowt only $141,250.00. A fifty-fifty split would have resulted in Trowt and Silva each receiving $250,412.50. Thus, on Claim II (breach of fiduciary duty), judgment shall enter in favor of Trowt in the amount of $109,162.50. In addition, Trowt proved, by a preponderance of the evidence, that Silva breached the fiduciary duty he owed Beverly Storage. In fact, the evidence presented reveals two different, but related, bases for this claim. First, the evidence at trial demonstrated that, between 2006 and 2011, while he was solely responsible for all financial matters related to Beverly Storage s operations, including payroll and accounts receivable, Silva siphoned revenues and skimmed profits from the business. Second, the evidence at trial demonstrated that, between this same time frame, Silva opened numerous credit accounts in Beverly Storage s name, which he used for his own personal use. For example, the evidence showed Silva used Beverly Storage s accounts to pay for dating websites, department store charges, grocery store charges, personal gas purchases, automotive repairs, and office supplies used in connection with Clear Skys, his personal travel business. In engaging in this wrongdoing, Silva acted out of avarice and self-interest, contrary to the fiduciary duty he owed Beverly Storage. Consequently, Trowt is entitled to judgment in his favor on Count II (breach of fiduciary duty), as derivative of Beverly Storage. Again, as no contrary evidence was presented at trial on the issue of damages, as a starting point, the court references The Parker Report. If Silva had properly deposited all funds he received into Beverly Storage s account for the period 2006 to November 2011, there would have been an additional $140,815.20 in deposits.5 And, if Silva had not used Beverly Storage s money for his own personal use, the company would also have had another $104,355.00 in revenue. Thus, on Claim I (breach of fiduciary duty) judgment shall enter in favor of Trowt, derivative of Beverly Storage, in the amount of $245,170.20. Silva s Counterclaims: On Counterclaims I and II, judgment shall enter in favor of Trowt. Silva failed to provide sufficient evidence to demonstrate Trowt breached the fiduciary duty he owed him or Beverly Storage. These claims are premised upon several different theories. First, Silva claims Trowt breached his fiduciary duty by parking/storing Trowt Moving equipment at 145 Rear Hale Street without paying rent. Second, he claims Trowt breached his fiduciary duty by leaving storage trailers at the Manchester-by-the-Sea location without paying rent. Third, he claims Trowt breached his duty by failing to pay rent for office space he uses at 145 Rear Hale Street. These assertions fail with little analysis. At trial, Silva failed to establish that there was ever any agreement between Trowt/Trowt Moving and Beverly Storage/Silva whereby Trowt Moving would pay to park its equipment at 145 Rear Hale Street, pay to store trailers at the Manchester-by-the-Sea location, or pay to rent office space at 145 Rear Hale Street. Rather, the evidence established that

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|

Trowt Moving and Beverly Storage have a symbiotic relationship. And that, to the extent Trowt Moving benefited from its relationship with Beverly Storage, Beverly Storage equally benefited from that relationship. An example of this symbiotic relationship is demonstrated by the fact that Beverly Storage does not even own a tractor to move its trailers and thus, the only way the storage trailers can be moved from the warehouse in Beverly to the location in Manchester-by-the-Sea is by using Trowt Moving s tractor. Last, Silva argues that, in charging Trowt Moving customers overnight storage fees, Trowt usurped a corporate opportunity from Beverly Storage. This claim appears to be premised on the idea that, if Trowt did not allow its customers to store their items in its trucks overnight, the customers would pay to store their items at Beverly Storage. This claim is without merit. While it is true that a shareholder breaches his fiduciary duty by acquiring or diverting a corporate business opportunity for his personal profit[,] the fact that the corporation would not have been able to avail itself of that opportunity is a defense to such a claim. Puritan Med. Ctr., Inc. v. Cashman, 413 Mass. 167, 177-178 (1992). The evidence presented at trial establishes that this was the case in the current matter. Even assuming Trowt Moving s customers would choose to rent space at Beverly Storage, Beverly Storage did not have the manpower and resources to unload and reload Trowt Moving s trucks all to obtain a one or two-day storage fee.6 II. Breach of Contract and Conversion Trowt s claim for breach of contract (Count III) and his derivative claim for conversion (Count IV) as well as Silva s counterclaim for breach of contract (Counterclaim III) are subsumed into the above analysis. These claims assert the same theories of liability and request, essentially, the same relief. For this reason, the court need not analyze them in detail. Nevertheless, the court notes the following: With respect to the breach of contract claims, judgment shall enter in favor of Trowt. The evidence presented at trial demonstrated the following relevant facts: that Trowt and Silva had an agreement to split profits on a fifty-fifty basis; that Trowt and Silva had an agreement whereby Silva agreed to be responsible for the business s financial and administrative matters while Trowt served as the primary customer contract; that Silva breached this agreement by paying himself a larger salary and misappropriating funds belonging to Beverly Storage; and that Trowt and Beverly Storage were damaged as a result of Silva s conduct. Similarly, as to the conversion claim, judgment shall enter in favor of Trowt, as the evidence presented at trial demonstrated that Silva misappropriated money rightfully belonging to Trowt and Beverly Storage. III. Silva s Third-Party Claim Against Trowt Moving for Breach of Contract Silva asserts a third-party claim against Trowt Moving for breach of contract in connection with Trowt Moving s failure to pay for parking its vehicles at 145 Rear Hale Street, failing to pay to store its trailers at the Manchester-by-the-Sea location, and for failing to pay rent for the use of office space at 145 Rear Hale Street. This claim fails. To establish a claim for breach of contract, a plaintiff must demonstrate the following: (1) an agreement exists between the plaintiff and the defendant; (2) the plaintiff fully performed his obligations under the agreement; (3) the defendant breached the agreement; and (4) the plaintiff suffered damages as a result of the breach. See Singarella v. Boston, 342 Mass. 385, 387 (1961); see also Richard W. Bishop, Prima Facie Case 2.1, at 13 (2005). At trial, Silva failed to provide sufficient evidence to demonstrate there was ever any agreement between Trowt/Trowt Moving and Beverly Storage/Silva regarding parking, rental payments, or storage fees.7 Instead, the evidence demonstrated that Trowt and Beverly Storage worked in a symbiotic relationship where each used the services and facilities of the other on an as needed basis with no formal reimbursement. Judgment shall enter in favor of Trowt Moving on the third party claim for breach of contract. IV. Accounting Trowt has sought an accounting in this matter. An accounting is proper where a violation of a fiduciary relationship has been established, but reconciling the rights and obligations of the parties is so complicated that it cannot be conveniently accomplished by the court. See In re Evangelist, 760 F.2d 27, 29-30 (1st Cir. 1985); Crane v. Royster, 255 Mass. 118, 120 (1926). This is not the case here. Instead, in this case, an accounting appears unnecessary. The evidence demonstrates that Trowt is entitled to damages in the amount of $109,162.50 for his direct claim of breach of fiduciary duty and in the amount of $245,170.20 for the claim of breach of fiduciary duty, which he asserts derivatively on behalf of Beverly Storage. ORDER Based upon the findings of fact and rulings of law made after trial on the merits, the court shall enter judgment in favor of Trowt

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| | as to all claims he asserts individually against Silva as well as to those he asserts derivatively on behalf of Beverly Storage. Judgment shall also enter in favor of Trowt as to all counterclaims Silva asserts individually against him as well as to those Silva asserts derivatively on behalf of Beverly Storage. Finally, judgment shall enter in favor of Trowt Moving as to Silva s third-party claim for breach of contract. Specifically with respect to Trowt s claim for breach of fiduciary duty, judgment shall enter against Silva in the amount of $109,162.50. And, as to the claim for breach of fiduciary duty Trowt asserts as derivative of Beverly Storage, judgment shall enter against Silva in the amount of $245,170.20. Judgment is ORDERED entered accordingly upon the docket by the clerk magistrate and notice shall be provided to the parties pursuant to Mass. R. Civ. P. 58. SO ORDERED : Hon. Robert A. Cornetta Justice .Date: October 31, 2014 (Copies mailed 11/03/2014) | |
| 11/04/2014 | Judgment This action came on for jury waive trial before the Court, Robert A. Cornetta, Judtice, presiding, and the issues having been duly tried, and Court having rendered a "Findings of Fact, Rulings of Law, and Order for Judgment It is ORDERED and ADJUDGED: That judgment be and hereby is entered in favor of Trowt as to all claims he asserts individually against Silva as well as to those he asserts derivatively on behalf of Beverly Storage. Judgment his hereby entered in favor of Trowt as to all Counter/ Claims Silva asserts individually against him as well as to those Silva asserts derivatively on behalf of Beverly Storage. Judgment is hereby entered in favor Trowt Moving as to Silva's third party claim for breach of contract. Specifically with respect to Trowt's claims for breach of fiduciary duty. Judgment is hereby entered against Silva in the amount of $109,162.50 plus interest from 7/5/2011 thru 11/4/2014 in the amount of $43,713.23 and; It is further ORDERED and ADJUDGED: That judgment entered as to the claim for breach of fiduciary duty Trowt asserts as derivative of Beverly Storage. Judgment is hereby entered against Silva in the amount of $245,170.20 with interest from 7/5/2011 thru 11/4/2014 in the amount of $98,176.41 and its cost of action. | 28 |
| 11/04/2014 | Notice of judgment & copy of Judgment mailed 11/4/2014 | |
| 11/10/2014 | Defendant Richard Silva notice of appeal (received via fax) | 29 |
| 11/10/2014 | Notice of filing of appeal sent to all parties of record | 30 |
| 11/14/2014 | Copy of letter ordering transcript of Richard J Silva from OTS | 31 |
| 11/14/2014 | Plaintiff and third party defendant Peter Trowt's MOTION to Amend judgment pursuant to Mass. R. Civ. P. 59(e) to include request for attorney's fees and costs | 32 |
| 11/14/2014 | Motion (P#32) Notice to be provided to parties that hearing on this matter will be held on 12/18/14 @ 2:00 pm and the parties may submit memoranda of law to the court no later than 12/5/14. (Robert A. Cornetta, Justice). Notices mailed 11/14/2014 | |
| 11/14/2014 | Notice sent to appear on 12/18/2014 for a hearing on Motion to amend judgment | |
| 12/04/2014 | Defendant Richard J Silva's MOTION to stay pending appeal | 33 |
| 12/05/2014 | Notice of appearance of Richard J Silva, pro se | 34 |
| 12/05/2014 | Attorney, Richard S Gilmore Jr's MOTION to withdraw as counsel of record for Richard J Silva | 35 |
| 12/08/2014 | Motion (P#35) Matter to be scheduled for a hearing with all other pending matters on 12/18/2014. (Thomas Drechsler, Justice). Notices mailed 12/8/2014 | |
| 12/08/2014 | Memorandum in support of Motion of Plaintiff, Peter Trowt, for Attorneys fees and costs | 36 |
| 12/08/2014 | Affidavit of Eric R. LeBlanc in support of Plaintiff's Motion for Attorney's fees and costs | 37 |
| 12/08/2014 | Motion (P#33) No action taken - Provisions of MRCP 62(D) are self explanatory and have that effect as stated in said rule. (Robert A. Cornetta, Justice). Notices mailed 12/9/2014 | |
| 12/10/2014 | Plaintiff Peter Trowt, and Third Party Defendant, Trowt Moving and Storage Inc's MOTION for Injunctive Relief Pending Appeal Pursuant to Mass. R. Civ. P. 62(c); (38A) Memorandum in Support, filed 12/9/2014 | 38 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 12/11/2014 | Notice sent to appear on 1/20/2015 for a hearing on Motion of Plaintiff and third party Defendant to amend judgment; Atty. Gilmore's Motion to Withdraw | |
| 12/15/2014 | Court received correspondence from Attorney Eric R. LeBlanc requesting that a hearing be held on the Plaintiff's Motion for Injunctive Relief on an emergency basis | 39 |
| 12/15/2014 | Motion (P#39) Parties shall appear on 12/17/2014 at 10:00 a.m. and plaintiff shall provide notice of said expedited hearing to the defendant forthwith. (Robert A. Cornetta, Justice). Notices mailed 12/15/2014 | |
| 12/16/2014 | Defendant Richard Silva's Motion to Continue Plaintiff's Motion for Injunctive Relief (received via fax) | 40 |
| 12/16/2014 | Defendant Richard Silva's Motion to Continue Plaintiff's Motion for Attorneys Fees (received via fax) | 41 |
| 12/16/2014 | Motion (P#40) DENIED (Robert A. Cornetta, Justice) Notices mailed 12/16/2014 | |
| 12/16/2014 | Motion (P#41) No action taken at this time. (Robert A. Cornetta, Justice). Notices mailed 12/16/2014 | |
| 12/16/2014 | Opposition to Plaintif's Motion for Injunctive Relief filed by Richard J Silva | 42 |
| 12/22/2014 | Ex parte communication from defendant | 44 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 12/23/2014 | FINDINGS, RULINGS AND ORDER : On November 4, 2014, after multiple days of jury waived trial, judgment in this matter was entered against the defendant, Silva in an aggregate amount in excess of four hundred ninety thousand ($490,000.00+) dollars. Docketed in this matter are the Court s detailed findings of fact and rulings of law issued after trial upon the merits.The defendant has now filed an appeal of that judgment and, pending said appeal has sought to postpone and stay any further action in this case.After trial, this Court made specific findings of breach of fiduciary duty by the defendant, Silva owed to the plaintiffs and specifically involving misappropriation of funds, deficiencies in record keeping and misfeasance undertaken, all to the detriment of the business. The parties have now been heard upon motion seeking post judgment injunctive relief brought by the plaintiffs against the defendant Silva, once again raising the issues of post judgment misfeasance in his business dealings with the individual and corporate plaintiffs. After hearing, findings are now made that the plaintiffs hold nearly a half million dollar judgment against the defendant, Silva and that his continued involvement in day to day business operations now presents a financial and records retention threat to the well being of that business. Accordingly, and pending the conclusion of the defendant, Silva s appeal in this matter, the following shall now be ORDERED, viz: 1. The defendant, Richard J. Silva, his agents, representatives, successors and assigns shall not enter upon property owned or operated by Trowt Moving and Storage, Inc. or by Beverly Storage Warehouse and Trailer Leasing, Inc., both real and personal. The said defendant may only enter upon any such premises as is consistent with this ORDER now issued. Plaintiffs may take those steps reasonably necessary and commercially acceptable to secure such property against future trespass. 2. The said Richard J. Silva shall return to the plaintiffs all books, documents, records, tax, payroll and banking documents and records (both stored in hard copy and electronically) prior removed by him from the business premises and concerning Trowt Moving and Storage, Inc. and Beverly Storage Warehouse and Trailer Leasing, Inc. Which are in or under the defendant, Silva s possession, care, custody or control. Said return shall be made to the plaintiff, Peter Trowt at a time and place to be mutually agreed to by the said Trowt and Silva, and which shall occur no later than the close of business on January 5, 2015. 3. Pending decision on appeal or until further order of this court, Beverly Storage Warehouse and Trailer Leasing, Inc. shall pay over to the defendant Silva dividends/profits in the amount of eight hundred twenty five ($825.00) dollars per week in lieu of the current payment to the said Silva made in the amount of one thousand one hundred ($1,100.00) dollars per week. This amount shall be carried upon the books of the corporation as an expense and shall be duly accounted for to state and federal taxing authorities as part of the overall accounting activities of the business. Pending further order of this Court, the defendant Silva and/or his legal representative shall be allowed access to the records of the business for purposes of examination and copying only during normal business hours and as agreed to by the parties. Any such copying or examination shall be conducted in the presence of a representative of the plaintiffs or a neutral as agreed to by the parties. This ORDER takes effect forthwith and may be modified by motion brought by any party after notice as required by court rules. By the Court: Hon. Robert A. Cornetta, Justice. Dated: December 23, 2014 (Copies mailed 12/23/2014) | 43 |
| 12/23/2014 | Application (P#41) ALLOWED by agreement (Robert A. Cornetta, Justice) | |
| 12/29/2014 | Notice sent to appear on 2/3/2015 for a hearing on | |
| 02/03/2015 | Motion (P#35) This motion has been withdrawn by the moving party in open court on this date. (Robert A. Cornetta, Justice). Notices mailed 2/4/2015 | |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 02/04/2015 | FINDINGS, RULINGS AND ORDER FOR ENTRY OF JUDGMENT: The parties have appeared and were heard once again regarding post trial issues. The defendant, Silva s counsel of record has advised the Court as of February 3, 2015 of his intention to now remain in the case. The parties have been heard upon motions brought by the defendant, Silva seeking to stay further proceedings pending appeal and upon the plaintiffs motions seeking attorneys fees and costs.Inasmuch as this litigation has been brought also as a derivative action, the plaintiffs as prevailing parties are now entitled to an award of attorneys fees and costs, provided their actions resulted in substantial benefit to the corporation. (See: G.L. Ch. 156D, s. 7.46 (1)). Here, it is clear that among those results obtained by the plaintiffs in this derivative action were the shutting down and misuse of corporate funds attributable to the defendant, Silva s breach of fiduciary duty as well as his conversion of corporate assets. (See decision dated October 31, 2014).These results no doubt afforded Beverly Storage Warehouse & Trailer Leasing, Inc. significant benefit in the nature of actual financial relief, while ultimately saving the business from financial harm. Based upon findings made after trial, the plaintiff s motion seeking to amend this Court s judgment by assessing attorneys fees and costs against the defendant, Richard J. Silva is ALLOWED. After trial, review and consideration of the record now before this Court, including the submissions by parties counsel, the Court now awards the plaintiff, Trowt attorneys fees in the amount of $136,144.40 plus costs of $35,523.85 for a total of $171,678.25. The outstanding judgment in this matter shall now be amended by the Clerk Magistrate to reflect the same.The defendant, Silva s separate motion argued before the Court which seeks a stay pending appeal (in the nature of a delay in the assessment of attorneys fees and costs) is denied, consistent of course withy the provisions of MRCP Rule 62 (d). By the Court: Hon. Robert A. Cornetta, Justice. Dated: February 4, 2015 (Copies mailed 02/04/2015) | 45 |
| 02/04/2015 | Defendant Richard Silva's Opposition to Plaintiff's Motion for Attorneys Fees and Costs (filed in Court 02/03/2015) | 46 |
| 02/04/2015 | Motion (P#46) Exhibit 'A' attached to this memorandum is now ordered stricken from the record. (Robert A. Cornetta, Justice). Notices mailed 2/4/2015 | |
| 02/04/2015 | Motion (P#32) ALLOWED-see written Findings, Rulings and Order of even date. (Robert A. Cornetta, Justice) Notices mailed 2/4/2015 | |
| 02/04/2015 | Amended Judgment This action came on before the Court, Robert A. Cornetta, Justice, presiding, and upon consideration thereof, after finding made after trial the plaintiff's motion seeking to amend this Court's judgment by assessing attorney's fees and cost against the defendant, Richard J. Silva motion is allowed, and in consideration of the record now before this Court including submissions by the parties' counsel; is allowed.and in consideration of the record now before this Court including submissions by parties' counsel, It is ORDERED AND ADJUDGED: That of the Court now amends its judgment of 11/4/2014 and also awards the plaintiff Peter Trowt Plaintiff/Defendant in Counterclaim attorney's fees. in the amount of $136.144.40 plus costs of $35,523.85 for a total of $171,678.25 Robert A. Cornetta, Justice. Copies mailed 2/4/2015 | 47 |
| 02/04/2015 | Notice of judgment & copy of Judgment mailed 2/4/2015 | |
| 02/27/2015 | Defendant's MOTION to amend order dated 12/23/14 | 48 |
| 04/01/2015 | Event Result: The following event: Status Review scheduled for 04/08/2015 04:00 PM has been resulted as follows: Result: Held as Scheduled Reason: By Court prior to date Appeared: | |
| 04/07/2015 | Opposition to paper #48.0 (motion to amend order of 12/23/14) filed by Peter Trowt | 49 |
| 04/07/2015 | Endorsement on Motion to amend order of 12/23/14 (#48.0): DENIED  see court's written memorandum & ruling of even date | |
| 04/07/2015 | MEMORANDUM & ORDER:  Upon review of the parties' submissions and based upon prior findings and rulings made by the Court after trial upon the merits, the defendant/plaintiff in counterclaim Silva's motion is DENIED. | 50 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 04/21/2015 | Defendant Richard J Silva's  Motion to | 51 |
|  | Get Possession of Trial CD's for the following Dates |  |
| 04/23/2015 | Endorsement on Motion to possession of trial cd's (#51.0): Other action taken |  |
|  | No action taken - Document fails to comply with Rule 9A - Sup. Ct. Rules. |  |
| 06/10/2015 | Appearance entered<br>On this date Jonathan L. Pickering, Esq. added for Defendant Richard J Silva |  |
| 06/10/2015 | Appearance entered<br>On this date Jonathan L. Pickering, Esq. added for Defendant Beverly Storage Warehouse & Trailer Leasing Inc |  |
| 06/18/2015 | Plaintiff Peter Trowt, Trowt Moving and Storage Inc's  Motion to | 52 |
|  | Dismiss Appeal for Lack of Prosecution; (52.1) Memorandum in Support of Appellee's Motion to Dismiss for Lack of Prosecution; (52.2) Request for Hearing; (52.3) Richard Silva's Opposition to Motion to Dismiss Appeal for Lack of Prosecution; (52.4) Richard Silva's Affidavit in Support of His Opposition to Motion to Dismiss Appeal for Lack of Prosecution; (52.5) Affidavit of Compliance; (52.6) Notice of Filing; (52.7) Certificate of Service, filed 6/18/2015 |  |
| 06/23/2015 | The following form was generated: |  |
|  | Notice to Appear<br>Sent On:  06/23/2015 13:08:35 |  |
| 07/09/2015 | Matter taken under advisement<br>The following event: Rule 12 Hearing scheduled for 07/09/2015 02:00 PM has been resulted as follows:<br>Result: Held - Under advisement<br>Appeared: |  |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 07/13/2015 | ORDER: FINDINGS, RULINGS AND ORDER: | 53 |

On November 4, 2011, after jury waived trial, this Court issued extensive written findings, rulings and an order for entry of judgment for the plaintiff in this matter.

On November 10, 2014, the defendant, Richard J. Silva filed his notice of appeal. Thereafter, Silva began prosecuting his appeal pro se.

On December 23, 2014, hearing was held upon the plaintiff's motion seeking post judgment injunctive relief, alleging further misfeasance on the part of Silva (this conduct by said defendant was also found after trial upon the merits). Based upon evidence presented at hearing, an injunction was issued against Silva as a means of conserving and protecting records and assets of certain of the parties.

Meanwhile, the pro se defendant, Silva was not undertaking credible action to prosecute his appeal filed on November 10, 2014. After a series of contacts between said defendant and the Clerk Magistrate's office which was awaiting action by Silva, on April 6, 2015, Mr. Silva was notified that the court's compact discs of the trial were ready for transcription in order that his appeal might move along.

On June 10, 2015, after over two months of inaction by Silva in prosecution of his appeal, the plaintiff moved for dismissal of that appeal for reasons of failure to comply with the rules of appellate procedure and failure to reasonably and timely prosecute his appeal which was filed on November 10, 2014.

The parties were heard on July 9, 2015, upon plaintiff's motion to dismiss the appeal. At hearing, the defendant appeared with counsel.

after hearing, findings are now entered as follows:

In nearly eight (8) months after filing his notice of appeal in this matter, the defendant, Richard J. Silva has failed to comply with MRAP 9 (c) and 10 (a).

Finding is further made that the defendant has failed to prosecute his appeal in timely fashion and has not complied with court rules. Finding of inexcusable neglect on the part of said defendant is now made in this matter based upon the record now before this Court and after hearing. At the time of the July 9, 2015 hearing, said defendant still had not cured his noncompliance with the rules. Thus, at this time, the plaintiff is entitled to the relief he now seeks.


ORDER OF DISMISSAL :


Upon findings made after hearing, with all parties having been heard and represented by counsel and pursuant to MRAP Rule 10 (c), the plaintiff's motion seeking dismissal of the defendant, Richard J. Silva's appeal is ALLOWED and said appeal is dismissed.


By the Court:


Hon. Robert A. Cornetta,
Justice

July 10, 2015

| | | |
|---|---|---|
| 08/06/2015 | Request for execution | 54 |

File sent to SSC

Applies To: LeBlanc, Esq., Eric R. (Attorney) on behalf of Trowt Moving and Storage Inc (Other interested party)

| | | |
|---|---|---|
| 08/12/2015 | General correspondence regarding Letter dated July 30, 2015 addressed to the Honorable Robert Cornetta from Richard Silva, received 8/10/2015 | 55 |
| 08/12/2015 | Endorsement on Submission of (#55.0): Other action taken | |

Ex parte communication from defendant to be docketed and copy to be forwarded to plaintiff's counsel. Dated 8/11/2015

| | | |
|---|---|---|
| 09/02/2015 | Execution issued on the judgment dated 11/04/2014, (#28.0) against the following party(s): Richard J Silva in favor of Peter Trowt. In the amount of 343,393.99 - judgment in the amount of $152,875.73 (which includes 43713.23 in pre-judgment interest), plus 35,523.85 in costs, plus 18,719.01 in post-judgment interest on judgment amount plus costs), plus 136,144.40 in attorney's fees for a total execution amount of 343,393.99. | |
| 09/02/2015 | Execution issued on the judgment dated 11/04/2014, (#28.0) against the following party(s): Richard J Silva in favor of Beverly Storage Warehouse & Trailer Leasing Inc. In the amount of 377,460.84 - judgment total of 343346.61 (which includes pre-judgment interest) plus post-judgment interest of 34,114.23. Creditor: Beverly Storage Warehouse & Trailer Leasing, Inc. (claims brought derivatively by Peter Trowt) | |
| 11/04/2015 | Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc's MOTION for reconsideration of Court Order dated 07/10/2015 re: paper #53.0. | 56 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 11/04/2015 | Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc's Memorandum in support of Motion for Reconsideration | 56.1 |
| 11/04/2015 | Opposition to paper #56.2 Motion for Reconsideration filed by Peter Trowt | 56.2 |
| 11/04/2015 | Affidavit of compliance with Superior Court Rule 9A<br>Applies To: Pickering, Esq., Jonathan L. (Attorney) on behalf of Beverly Storage Warehouse & Trailer Leasing Inc (Defendant) | 56.3 |
| 11/05/2015 | Request for hearing filed<br>Applies To: Silva, Richard J (Defendant) | 57 |
| 11/09/2015 | Endorsement on Motion for reconsideration (#56.0): DENIED<br>Upon review and consideration of the parties' submissions and finding no new evidence in this matter not prior considered by this Court, there being no grounds to otherwise reconsider the Court's final action, motion is denied. | |
| 12/01/2015 | Appeal<br>Review by Appeals Court filed on 11/30/2015 by Silva, Richard J | 58 |
| 12/01/2015 | On 11/30/2015, Defendant, Richard Silva filed a Notice to Appeal from the Final Judgment which was entered on 11/09/2015. Copy of Notice of Appeal mailed to all parties of record. | 59 |
| 12/14/2015 | Amended Notice of appeal filed<br>Applies To: Silva, Richard J (Defendant) | 60 |
| 12/14/2015 | On 12/14/2015, The Defendant, Richard Silva filed a Notice to Appeal from the Final Judgment which was entered on 11/09/2015. Copy of Notice of Appeal mailed to All parties of record. | 61 |
| 12/14/2015 | Court received Notice that a transcript has been ordered related to appeal | 62 |
| 12/21/2015 | Defendant Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc's motion to vacate judgment, for new trial | 63 |
| 12/21/2015 | Affidavit filed by Defendant Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc in support of motion to vacate judgment, for new trial | 63.1 |
| 12/21/2015 | Opposition to paper #63.0 (motion to vacate judgment, for new trial) filed by Peter Trowt | 63.2 |
| 12/23/2015 | Endorsement on Motion for relief from judgment and for new trial (#63.0): DENIED<br>Upon review and consideration findings are now entered that the moving party has produced no new evidence in this matter that the affidavit in support of said motion is conclusary and that the motion is not brought in good faith. Motion is denied and , the parties shall now appear for hearing on 2/4/16 @ 2:00 pm to be heard upon pltfs' motion seeking sanctions in this matter. | |
| 12/23/2015 | The following form was generated:<br>Notice to Appear<br>Sent On: 12/23/2015 13:08:03 | |
| 01/13/2016 | The following form was generated:<br>Notice to Appear<br>Sent On: 01/13/2016 09:15:18 | |
| 01/27/2016 | Plaintiff Peter Trowt's Motion to continue / reschedule an event 02/18/2016 02:00 PM Hearing: Sanctions | 64 |
| 02/02/2016 | Endorsement on Motion to continue / reschedule an event (#64.0): DENIED<br>without prejudice for failure to comply with Rule 9A. Counsel moves for continuances with no input from opposing counsel on what new date is possible for opposing counsel. | |
| 02/09/2016 | Plaintiff Peter Trowt's Request to continue / reschedule an event 02/18/2016 02:00 PM Hearing: Sanctions | 65 |
| 02/09/2016 | Defendant Richard J Silva's Motion to<br>Receive Copy of Audio Recordings for the Following Dates: 2/3/2014, 2/4/2014, 2/6/2014, 2/7/2014 and 2/10/2014 | 66 |
| 02/10/2016 | Endorsement on Request to received copy of audi recordings (#66.0): DENIED<br>After consideration, the motion is DENIED. Mr. Silva has already received copies of the audio recordings. Dated 2/10/2016 | |
| 02/12/2016 | Endorsement on Request to continue / reschedule an event (#65.0): ALLOWED | |
| 02/12/2016 | The following form was generated:<br>Notice to Appear for sanctions hearing (2/25/16)<br>Sent On: 02/12/2016 08:22:43 | |
| 02/25/2016 | Appearance entered<br>On this date Pro Se added for Defendant Richard J Silva | |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 03/23/2016 | Endorsement on Motion for audio recordings (#66.0): ALLOWED<br>After hearing and upon reconsideration, the defendant, Richard Silva's request for audio recordings is allowed upon payment of $50.50 per audio disc. | |
| 04/21/2016 | Defendant Richard J Silva, Beverly Storage Warehouse & Trailer Leasing Inc's  motion for new trial<br>Defendant's Motion for Relief from Judgment and for New Trial, dated 11/4/15 | 67 |
| 04/21/2016 | Affidavit of Affidavit Supporting Defendant's Motion for Relief From Judgment and For New Trial, datd 11/2/15 | 67.1 |
| 04/21/2016 | Opposition to paper #67.0 Peter Trowt's Opposition to Motion of Richard Silva and BEverly Storage Warehouse & Trailer Leasing, Inc., for Relief From Judgment and for New Trial, and Cross Motion for Sanctions Pursuant to Mass R,Civ,P. 11(A), dated 11/17/15 filed by Peter Trowt | 67.2 |
| 04/21/2016 | Endorsement on Motion for Relief from Judgment and for New Trial (#67)/Motion for Sanctions (67.2) (#67.2): DENIED<br>Judge Cornetta denied the motion for new trial (paper #63) on 12/23/15 and found motion was brought in bad faith.  This motion appears to raise the same issues.  There is no new evidence presented herein and the motion is DENIED.  Sanctions will not be issued but another frivolous or repetitive motion will create a risk of sanctions.  Dated 4/13/2016 | |
| 04/21/2016 | General correspondence regarding Request for audio recordings for 2/3/14, 2/4/14, 2/6/14, 2/7/14 and 2/10/14, with a check in the amount of $252.50 from Richard Silva on 4/21/2016 (as was approved by the Court, Wall, J. on 3/23/16, upon payment of $50.50 per audio disc) | 68 |
| 04/21/2016 | General correspondence regarding audio recordings from 2/3/14, 2/4/14, 2/6/14, 2/7/14 and 2/10/14 forwarded to Richard Silva on this date at 14 Dearborn Street, Salem, MA  01970. | |
| 10/05/2016 | ORDER sent for Status Review, if notice is not received by 11/09/2016 the complaint will be dismissed.<br>Relating to status of appeal and/or filing transcript with the Court relating to appeal | 69 |
| 10/13/2016 | Status review notice returned This is not settled and still being worked on...<br>Defendant also requested a copy of docket sheet, which was sent.<br><br>Applies To: Silva, Richard J (Defendant) | 70 |
| 10/27/2016 | Complaint for contempt filed. | 71 |
| 11/07/2016 | Endorsement on Application for Complaint for contempt (#71.0): Other action taken<br>Summons to issue, solely to consider whether an answer in necessary | |
| 11/07/2016 | Document:<br>Summons on Contempt (11/17/16)<br>Sent On:  11/07/2016 15:56:54 | |
| 11/07/2016 | Defendant Richard J Silva's   Submission of<br>Legal Argument | 72 |
| 11/15/2016 | Attorney Jonathan L. Pickering, Esq.'s motion to withdraw as counsel of record for party<br><br>Applies To: Silva, Richard J (Defendant); Beverly Storage Warehouse & Trailer Leasing Inc (Defendant) | 73 |
| 11/15/2016 | Affidavit filed by Defendant Richard J Silva in support of<br>P#73<br><br>Applies To: Silva, Richard J (Defendant); Beverly Storage Warehouse & Trailer Leasing Inc (Defendant) | 73.1 |
| 11/15/2016 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Pickering, Esq., Jonathan L. (Attorney) on behalf of Silva, Richard J (Defendant) | 73.2 |
| 11/15/2016 | Rule 9A list of documents filed.<br><br>Applies To: Pickering, Esq., Jonathan L. (Attorney) on behalf of Silva, Richard J (Defendant) | 73.4 |
| 11/17/2016 | Plaintiff Peter Trowt's   Motion to<br>Dismiss Richard Silva and Beverly Storage Warehouse & Trailer Leasing, Inc.'s Appeal | 74 |
| 11/17/2016 | Peter Trowt's  Memorandum in support of<br>Motion to Dismiss Appeal | 74.1 |
| 11/17/2016 | Request for hearing filed<br><br>Applies To: Trowt, Peter (Plaintiff) | 74.2 |
| 11/17/2016 | Affidavit of compliance with Superior Court Rule 9A<br><br>Applies To: Bennett, Esq., Todd Jarrett (Attorney) on behalf of Trowt, Peter (Plaintiff) | 74.3 |
| 11/17/2016 | Matter taken under advisement<br>The following event: Motion Hearing to Compel scheduled for 11/17/2016 02:00 PM has been resulted as follows:<br>Result: Held - Under advisement | |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 11/22/2016 | Attorney Richard S. Gilmore, Jr., Esq.'s motion to withdraw as counsel of record for party | 75 |
| | Applies To: Silva, Richard J (Defendant) | |
| 11/22/2016 | Endorsement on Application for Complaint for civil contempt (#71.0): Other action taken<br>After hearing, the Complaint is dismissed with no answer required.  Mr. Silva stated at the hearing that he, as shareholder, favored changing accountants for the company.  That agreement removes any issue remaining from the events which led to the contempt complaint. | |
| 11/22/2016 | Endorsement on Motion to Dismiss Richard Silva and Beverly Storage Warehouse & Trailer Leasing, Inc.'s Appeal (#74.0): ALLOWED<br>Judge Cornetta denied a motion to reconsider on November 9, 2015 which led to a Notice of Appeal filed December 14, 2015.  During the 11 months, Mr. Silva has failed to file an appeal.  At hearing, Mr. Silva alleged that someone purposely deleted portions of the official court recording, a matter which he said he brought to the attention of the FBI and the "FBI is interested" in investigating further.  These statements have absolutely no evidentiary support.  There is no good cause for the failure to pursue the appeal and motion to dismiss appeal is allowed. | |
| 11/22/2016 | Endorsement on Motion to withdraw as counsel (#75.0): ALLOWED<br>After hearing with Mr, Silva present, it is well established that Attorney Gilmore functionally withdrew long ago.  The motion is allowed. | |
| 11/22/2016 | Attorney appearance<br>On this date Richard S. Gilmore, Jr., Esq. dismissed/withdrawn as Private Counsel for Defendant Beverly Storage Warehouse & Trailer Leasing Inc | |
| 11/30/2016 | Endorsement on Motion to Withdraw as Counsel (#73.0): ALLOWED | |
| 11/30/2016 | Attorney appearance<br>On this date Jonathan L. Pickering, Esq. dismissed/withdrawn for Defendant Richard J Silva | |
| 11/30/2016 | Attorney appearance<br>On this date Jonathan L. Pickering, Esq. dismissed/withdrawn for Defendant Beverly Storage Warehouse & Trailer Leasing Inc | |
| 06/12/2017 | Complaint for contempt filed. | 76 |
| | Applies To: Trowt, Peter (Plaintiff); Beverly Storage Warehouse & Trailer Leasing Inc (Defendant) | |
| | **EXHIBITS ATTACHED** | |
| 06/12/2017 | Attorney appearance<br>On this date Steven A. Grant, Esq. added for Defendant Richard J Silva | 77 |
| 06/14/2017 | Endorsement on Motion for complaint for contempt (#76.0): Summons and Order of Notice to issue<br>to determine whether a summons on contempt should issue returnable on 7/13/17 @2:00P.M.in Lawrence Superior Court"C" session. | |
| 06/14/2017 | Upon Defendant's request for an order of notice to show cause why aa contempt summons shall not be issued, returnable on 07/13/2017 02:00 PM Hearing on Contempt.  The following party(s) is ordered to appear Peter Trowt, Beverly Storage Warehouse & Trailer Leasing Inc. | |
| 07/11/2017 | Plaintiff, Defendant Peter Trowt, Richard J Silva's  Assented to Motion to continue / reschedule an event 07/13/2017 02:00 PM Hearing on Contempt<br>Hearing be continued by 30 days. | 78 |
| 07/11/2017 | Endorsement on Motion to continue / reschedule an event Hearing on Motion for Complaint for Contempt. (#78.0): ALLOWED<br>Hearing continued to 9/14/17 at 2:00 pm. | |
| 07/11/2017 | Event Result:<br>The following event: Hearing on Contempt scheduled for 07/13/2017 02:00 PM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Joint request of parties | |
| 09/13/2017 | Defendant Richard J Silva's  Assented to Motion to continue / reschedule an event 09/14/2017 02:00 PM Hearing on Contempt<br>SECOND | 79 |
| 09/13/2017 | Endorsement on Motion to continue / reschedule an event To Continue Hearing on Motion for Complaint for Contempt. (#79.0): ALLOWED | |
| 09/13/2017 | Event Result:<br>The following event: Hearing on Contempt scheduled for 09/14/2017 02:00 PM has been resulted as follows:<br>Result: Rescheduled<br>Reason: Request of Defendant | |
| 12/29/2017 | Defendant Richard J Silva's  Motion for Clarification and Modification | 80 |
| 12/29/2017 | Richard J Silva's  Memorandum in support of Motion for Clarification  and Modification | 80.1 |

| Docket Date | Docket Text | File Ref Nbr. |
|---|---|---|
| 12/29/2017 | Opposition to to Motion for Clarification and Modification and Request for Sanctions filed by Peter Trowt, Beverly Storage Warehouse & Trailer Leasing Inc | 81 |
| 01/03/2018 | General correspondence regarding File to SSC to Judge Feeley  re. P. #80 | |
| 02/01/2018 | Defendant Richard J Silva's   Motion to disqualify counsel | 82 |
| 02/01/2018 | Richard J Silva's   Memorandum in support of Motion to disqualify counsel | 82.1 |
| 02/01/2018 | Opposition to to Motion to disqualify counsel and request for sanctions filed by Peter Trowt | 82.2 |
| 02/01/2018 | Opposition to to request for sanctions filed by Richard J Silva | 82.3 |
| 02/01/2018 | Certificate of service of attorney or Pro Se:   Eric R LeBlanc, Esq. | 82.4 |
| 02/05/2018 | Endorsement on Motion to Disqualify Counsel (#82.0): DENIED Without hearing and for substantially the reasons set forth in the plaintiffs' opposition, the defendant's motion to disqualify plaintiffs' counsel is DENIED. The court believes from the papers presented that both plaintiffs are sophisticated business parties who may decide for themselves whether their joint counsel presents a conflict. Additionally, the defendant's failure to receive a statement that Judge Cornetta's Order is in effect is the basis for no issue or further discussion-without further order by the Court, Judge Cornetta's Order is and remains in full force and effect.   Judge: Tucker, Hon. Richard T | |
| 02/13/2018 | Endorsement on Motion for Clarification and Modification (#80.0): DENIED After review, motion is denied for reasons stated in plaintiffs' opposition. Plaintiffs' motion for sanctions is denied.   Judge: Feeley, Hon. Timothy Q | |
| 02/13/2018 | General correspondence regarding File back to Lawrence Superior Court | |

## Case Disposition

| Disposition | Date | Case Judge |
|---|---|---|
| Judgment after Non- Jury Trial | 02/04/2015 | |

# EXHIBIT B

2 7

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, ss.

SUPERIOR COURT
CIVIL ACTION
NO. 2011-01279

PETER TROWT,
Plaintiff/Defendant-in-Counterclaim,

v.

RICHARD SILVA,
Defendant/Plaintiff-in-Counterclaim,

AND

BEVERLY STORAGE WAREHOUSE & TRAILER LEASING, INC.,
Derivatively,

v.

TROWT MOVING & STORAGE, INC.,
Third-Party Defendant.

## FINDINGS OF FACT, RULINGS OF LAW, AND ORDER FOR JUDGMENT

### INTRODUCTION

The plaintiff, Peter Trowt ("Trowt"), and the defendant, Richard Silva ("Silva"), each own a fifty percent interest in Beverly Storage Warehouse & Trailer Leasing, Inc. ("Beverly Storage"). This case involves the breakdown of their business relationship and the alleged misappropriation of certain Beverly Storage assets. On November 8, 2011, Trowt filed the First Amended Complaint and, on December 5, 2011, Silva filed the Amended Counterclaim and Third Party Claim. In order to resolve this matter, the court held a five-day jury waived trial between February 3, 2014 and February 10, 2014.

Trowt asserts claims against Silva, individually, for breach of fiduciary duty (Count II) and breach of contract (Count III), as well as derivatively, on behalf of Beverly Storage, for breach of fiduciary duty (Count I) and conversion (Count IV). He also asserts a claim for an accounting. Essentially, Trowt argues Silva violated his duty of utmost good faith and loyalty by misappropriating certain Beverly Storage assets to his (Trowt's) detriment. Trowt accuses Silva of three basic categories of misconduct. First, Trowt alleges that, contrary to their agreement to split profits fifty-fifty, Silva, who was responsible for all of Beverly Storage's financial matters, unevenly distributed company profits by paying himself a higher salary. Second, Trowt claims that Silva siphoned cash from customer payments meant to be deposited in Beverly Storage's accounts. Third, Trowt contends Silva misappropriated assets by using company credit cards to pay for personal items/expenses. At trial, in support of these claims, Trowt offered the expert testimony of Kathy L. Parker ("Parker"), a certified public accountant with a Master of Science in Taxation.

Silva asserts claims against Trowt, individually, for breach of fiduciary duty (Counterclaim I) and breach of contract (Counterclaim III), as well as derivatively, on behalf of Beverly Storage, for breach of fiduciary duty (Counterclaim II). In addition, Silva asserts a third-party claim against Trowt Moving & Storage, Inc. ("Trowt Moving"), which is Trowt's separately owned moving business, for breach of contract. Basically, Silva claims Trowt breached his duties of good faith and loyalty and caused Beverly Storage and thus, him, economic harm by permitting Trowt Moving to use Beverly Storage's land and facilities without paying rent. At trial, Silva offered no expert testimony or other evidence sufficient to support of these claims. In particular, aside from his own speculations, he offered no evidence describing his measure of damages.

## FINDINGS OF FACT

Based upon the evidence presented at trial, including the credible testimony of each party's witnesses and the various exhibits that were submitted, the court makes the following findings of fact.

**The Parties and Relevant Business Entities:**

Trowt is an individual residing in Beverly, Massachusetts. At all times relevant to the current matter, Trowt has owned a fifty percent interest in Beverly Storage. Silva is an individual residing in Salem, Massachusetts. At all times pertaining to the current dispute, Silva has also owned a fifty percent interest in Beverly Storage. Beverly Storage is a small closely held corporation with a principal place of business at 145 Rear Hale Street, Beverly, Massachusetts.[1] Beverly Storage receives revenue from its customers in two ways: (1) from the rental of storage rooms at its warehouse in Beverly; and (2) from the rental of one of approximately forty-two various sized trailers, which it pays $2,000.00 per month to store at a rental location in Manchester-by-the-Sea, Massachusetts. Beverly Storage is named in this suit in order for the parties to obtain requested derivative relief.

Trowt Moving is a business entity formed under the laws of Massachusetts. It has a principal place of business also located at 145 Rear Hale Street. Trowt is the sole shareholder and President of Trowt Moving. Trowt Moving is a moving company that moves personal items belonging to its customers from one place to another. In the late 1980s, Silva worked for Trowt Moving. Then, in 1993, Trowt and Silva formed a partnership when each purchased a fifty percent interest in Beverly Storage. In 1993, Trowt and Silva also each purchased a fifty percent

---

[1] Beverly Storage only has two full time employees, Trowt and Silva, and one part time employee, a young woman who works part-time on Saturdays.

ownership interest in the land located at 145 Rear Hale Street, which is currently owned by a realty trust identified as the 145 Rear Hale Street Realty Trust (the "Realty Trust").[2]

In 1997, Trowt and Silva formally incorporated Beverly Storage and each became a fifty percent shareholder. In this case, Silva claims Trowt Moving unfairly and without compensation made use of Beverly Storage's land and facilities. The court finds that the evidence presented at trial demonstrated that there is a symbiotic relationship between Trowt Moving and Beverly Storage. Even before Trowt and Silva became partners and shareholders in Beverly Storage, Trowt Moving and Trowt accounted for the origination of approximately ninety-five percent of Beverly Storage's customers. To this day, Trowt and Trowt Moving are still responsible for the origination of a significant portion of Beverly Storage's business.

Trowt Moving also provided Beverly Storage with other benefits. For example, Trowt Moving regularly moves and transports trailers belonging to Beverly Storage, which contain goods and property belonging to Beverly Storage's customers, as Beverly Storage does not own its own tractor. In addition, Trowt Moving's employees regularly spend time performing tasks for Beverly Storage, getting customers to sign contracts, answering the office telephone, sending out bills, addressing customer concerns, and collecting certain fees. Beverly Storage does not pay Trowt Moving any money or reimburse it in any way for these tasks. Thus, the court finds that, to the extent that Trowt Moving may have benefited from its relationship with Beverly Storage, Beverly Storage benefited equally from the relationship.

---

[2] Currently, Trowt and Silva are the sole trustees and beneficiaries of the Realty Trust.

## TROWT'S CLAIMS

**Beverly Storage Management & Operations:**

Beverly Storage has only distributed profits in the form of weekly salaries. In 1993, when Trowt and Silva purchased Beverly Storage's assets, they agreed to split all the business profits and losses equally, on a fifty-fifty basis. Later, at some point in 1994, Trowt agreed to allow Silva to collect a higher salary than he (Trowt) was receiving, at a ratio of sixty-five (Silva) to thirty five (Trowt) percent. Nevertheless, thereafter, when Trowt and Silva officially incorporated the business in 1997, they reverted back to their original agreement that all profits and losses would be split on a fifty-fifty basis.

From the commencement of Trowt and Silva's partnership in 1993 until some point after the start of this litigation, Silva was responsible for all financial aspects of the company, including, accounts receivable, accounts payable, and vendor payments, as well as other office administration tasks. Silva was the only person at Beverly Storage with access to company passwords, bank accounts, credit cards, and payroll services. Silva was the only person who dealt with Beverly Storage's accountant and was responsible for all the company's accounting functions. Trowt, on the other hand, was responsible for generating business for Beverly Storage, which included providing estimates and maintaining good client relations.

Sometime in or about 2006 or 2007, after Silva started his own travel business, Clear Skys Travel ("Clear Skys"), the division of responsibilities began to shift. Trowt and Trowt Moving employees began assuming some of the office administration tasks Silva had typically completed, as he was no longer at the office on a full-time basis. By the time litigation began in 2011, Silva was, generally, not at Beverly Storage during the company's regular business hours, which required that Trowt or Trowt Moving's employees handle all day-to-day office

5

administration tasks.  Later, in or about late 2012, Trowt officially took over handling a majority

of the accounts receivable functions and processed a majority of all customer payments.

**Unequal Salaries:**

In 1993, when Trowt and Silva purchased Beverly Storage, they agreed to split profits

evenly, each receiving an equal salary.  At some point in 1994, Silva began receiving a higher

salary than Trowt, at a sixty-five to thirty-five percent ratio.  Thereafter, following the 1997

incorporation of Beverly Storage, Trowt and Silva agreed to go back to splitting profits on a

fifty-fifty basis.  By mid to late 1999, Trowt and Silva were receiving equal pay.  Sometime in

mid to late 2000, Trowt's salary was lowered and profits were being split at a sixty-five to thirty-

five percent ratio in Silva's favor.  Silva made this change without Trowt's knowledge or

consent.

From 2006 until November 2011, Silva received a higher salary than Trowt.  In fact,

between 2006 and late 2011, salaries were split between Trowt and Silva at a seventy-five to

twenty-five percent ratio favoring Silva.  Trowt never agreed to this salary adjustment and did

not discover the seventy-five twenty-five percent split until the latter part of 2010.  At that time,

Trowt instructed Silva to equalize their salaries, but he (Silva) refused.  In fact, Silva, who had

sole control of Beverly Storage's payroll, instructed Craig & Withers, Beverly Storage's

accountant, to ignore Trowt's demands for equal pay.  When Trowt contacted Craig & Withers,

he was informed that per Silva's instructions, they could not make any adjustments to his salary.

Trowt and Silva's salaries were not equalized until November 2011, when Trowt obtained a

preliminary injunction in connection with this case ordering Silva to make their salaries equal.

From 2006 to November 2011, Silva received $359,575.00 in salary from Beverly

Storage while Trowt received only $141,250.00 in salary from Beverly Storage.  *Exhibit 17,*

6

*Parker, Expert Witness Report, October 14, 2013* (hereinafter, "*The Parker Report*"). Thus,

from 2006 to November 2011, when Trowt and Silva agreed to split profits on a fifty-fifty basis,

when salaries were the only form of profit distribution Beverly Storage made, and when Silva

was solely responsible for the company's payroll, Silva paid himself $218,325.00 more than he

paid Trowt. *Id.*

**Siphoning Revenue:**

In addition to paying himself a higher salary, Silva siphoned revenue and cash from

Beverly Storage. Between 2006 and 2011, according to business records, Beverly Storage's

revenue remained relatively flat, averaging approximately $200,000.00 per year. *The Parker

Report.* Then, in late 2012, when Trowt took over the accounts receivable, including the

responsibility for depositing all customer payments into Beverly Storage's bank account, revenue

spiked. *Id.* In fact, annualizing the total deposits through August 2013, shows a nineteen percent

increase in revenue for 2013. *Id.* During this spike in revenue, Beverly Storage made no

operational changes other than the fact that Trowt began handling Beverly Storage's deposits.

Being conservative, estimating Silva was skimming only ten percent from Beverly Storage's

revenues, there would be an additional $140,815.20 in deposits for the period between January

2006 and December 2011. *Id.*

Silva also used funds from Beverly Storage to put a deposit on land he wished to

purchase in Rowley, Massachusetts. Silva's testimony on this issue was contradictory and not

credible. First, Silva testified that there was only one piece of land that he wanted to purchase

and that the only $5,000.00 check was shredded by the seller's real estate agent. Then, he

testified that the $5,000.00 deposit check was returned. When Trowt's attorney showed Silva

another $5,000.00 check, written off of Beverly Storage's account, Silva admitted that he had

placed a second $5,000.00 deposit on a second piece of land, which was forfeited.

Silva also collected cash from Beverly Storage's customers to bring with him on

vacation. At trial, Silva's ex-wife, Mary Rees, testified that, prior to scheduled vacation trips,

which occurred at least four times per year, Silva would hoard cash (at least $500.00) from

Beverly Storage's deposits for his personal use.

**Misappropriation of Beverly Storage's Assets for Personal Use:**

Between 2006 and 2011, Silva opened at least five credit cards in Beverly Storage's

name. Silva opened all of these credit accounts without informing Trowt of their existence.

Silva used Beverly Storage's credit cards for numerous personal purchases including: dating

websites, i.e., match.com and singlesnet.com, restaurants, motorcycle stores, Stop & Shop,

numerous gas purchases, massage parlors, shoe polish, noise canceling headphones, numerous

telephones, and other various purchases unrelated to the warehouse and storage business. Silva

made personal use of every credit account he opened in Beverly Storage's name. When

questioned about these allegations at trial, Silva had no credible explanation for the various

personal charges; he could not recall what was purchased or, for example, credibly explain why

Beverly Storage's various credit accounts listed charges for restaurants, massage parlors, grocery

stores, etc.[3]

Silva used at least $104,355.00 worth of Beverly Storage's money for his own personal

use. *The Parker Report*. These personal charges were split into four categories of

misappropriation: (1) personal expenses, such as dating websites and department stores; (2)

automotive expenses, such gas purchases and automotive repairs; (3) unrelated office supply

---

[3]  At trial, Silva's ex-wife, Rees, testified that, during her marriage to Silva, he would regularly (at least monthly)
use Beverly Storage credits cards at restaurants when paying for dinner and state words to the effect that "this one is
on the warehouse."

purchases; and (4) normal but excessive expenses. *Id.* Parker testified that, in reaching this total, she used conservative estimates and that, if she were able to obtain more credit card records the amount and number of Silva's personal charges would be even greater. The court credits this testimony. Trowt never agreed that Silva could use Beverly Storage's credit accounts for his own personal expenses or for expenses related to Clear Skys. Once this lawsuit began and Beverly Storage's credit accounts were cancelled, all inappropriate and excessive charges stopped.

## SILVA'S COUNTERCLAIMS

**Permission to Park at 145 Rear Hale Street:**

Silva seeks $500.00 per week from Trowt Moving as payment for it parking eight pieces of equipment at 145 Rear Hale Street. Trowt Moving has parked its vehicles at 145 Rear Hale Street since 1993. There was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva that Trowt Moving would pay $500.00 per week to park its vehicles at 145 Rear Hale Street. During trial, Silva provided no evidence, aside from his own speculation, as to the reasonable value of the parking spaces Trowt Moving uses. Moreover, the only parking bill Silva presented is dated October 2013, which is two years after litigation commenced.

**Overnight Storage:**

Silva seeks overnight storage fees from Trowt Moving for it charging to keep customers' goods on its trucks parked at 145 Rear Hale Street for one or two nights when customers need to be out of their old home before they can move into their new home. Silva has known that Trowt Moving charges overnight storage fees since at least 2003. And, there was never any formal agreement between Trowt Moving/Trowt and Beverly Storage/Silva whereby Trowt Moving agreed to pay Beverly Storage overnight storage fees in these circumstances. At trial, aside from

9

his own speculation, Silva provided no evidence relating to the amount of damage Beverly

Storage sustained as a result of Trowt Moving's collection of overnight storage fees.[4]

**Office Space:**

Silva seeks monthly rental fees from Trowt Moving for its use of office space located at

145 Rear Hale Street.  The office, which Trowt Moving uses, was constructed, built, and paid for

solely by Trowt Moving.  And, there was never any formal agreement between Trowt

Moving/Trowt and Beverly Storage/Silva that Trowt would pay for the use of this office space.

During trial, Silva provided no evidence, aside from his own speculation, as to what would

constitute a reasonable rental fee for the office space Trowt Moving uses.  Moreover, the only

office rental bill Silva presented is dated November 2011, right around the time Trowt

commenced this suit.  See *Exhibit 22*.

**Miscellaneous Claims:**

Silva claims that a Trowt Moving employee damaged a trailer belonging to Beverly

Storage and that, Trowt Moving refused to pay for the damage.  Silva has, however, known

about this alleged damage since 2005 and, at trial, he presented no evidence showing the damage

included or the cost of repairs.

Silva seeks to charge Trowt Moving for storing trailers at the location Beverly Storage

rents in Manchester-by-the-Sea.  There was never any formal agreement between Trowt

Moving/Trowt and Beverly Storage/Silva that Trowt Moving would pay to store its trailers at the

Manchester-by-the-Sea location.  This practice has been going on since before 2005 and Trowt

Moving has never been billed for storing its trailers at the Manchester-by-the-Sea location.

---

[4]  Even if Trowt Moving collects overnight storage fees from its customers for property it allows them to store on its
trucks for a day or two, there is no lost opportunity to Beverly Storage, as Beverly Storage does not have the
manpower to unload/reload Trowt Moving's customers' goods into a Beverly Storage trailer, all to obtain a fee for
one or two nights of storage.

Notably, at least one of Trowt Moving's trailers located in Manchester-by-the-Sea is full of

goods belonging to a Beverly Storage customer and Beverly Storage receives all storage fees

associated with the use of this trailer. Further, Beverly Storage does not own its own tractor,

consequently, the only way the trailers belonging to Beverly Storage can be transported to and

from Manchester-by-the-Sea is if Trowt Moving uses its tractor to move them.

Silva claims Trowt Moving stores various miscellaneous items belonging to it at 145

Rear Hale Street without Beverly Storage's permission. Based on the evidence presented at trial,

the court concludes any miscellaneous property Trowt Moving stores at 145 Rear Hale Street is

used for both Trowt Moving and Beverly Storage's customers, including the boxes, crates, pallet

jack, padding and plastic wrap. The court further concludes that these items are commingled

with similar items belonging to Beverly Storage and, thus, the items are not taking up space that

Beverly Storage would otherwise be able to rent.

## RULINGS OF LAW

In this case, Trowt asserts individual claims against Silva for breach of fiduciary duty

(Count II) and breach of contract (Count III) as well as derivative claims, on behalf of Beverly

Storage, for breach of fiduciary duty (Count I) and conversion (Count IV). Meanwhile, Silva

asserts individual claims against Trowt for breach of fiduciary duty (Counterclaim I) and breach

of contract (Counterclaim III) as well as a derivative claim, on behalf of Beverly Storage, for

breach of fiduciary duty (Counterclaim II). In addition, Silva asserts a third-party claim against

Trowt Moving for breach of contract. Below, the court addresses each of these claims.

### I.   Breach of Fiduciary Duty (Counts I & II and Counterclaims I & II)

In a close corporation, shareholders owe to the other shareholders and the corporation a

duty of utmost good faith and loyalty. *Donahue* v. *Rodd Electrotype Co. of New England, Inc.*,

367 Mass. 578, 593 (1975), quoting *Cardullo* v. *Landau*, 329 Mass. 5, 8 (1952) (internal

quotations omitted).  Essentially, shareholders of a closely held corporation owe to the business

and their fellow shareholders "substantially the same fiduciary duty in the operation of the

enterprise that partners owe to one another." *Id.* This requires that the shareholders place the

welfare of the business and that of the other shareholders ahead of their own personal interests.

*Demoulas* v. *Demoulas Supermarkets, Inc.*, 421 Mass. 501, 529 (1997).  Shareholders in a close

corporation are thus not permitted to frustrate the reasonable expectations of the other

shareholders with respect to share ownership, such as with regard to the fair distribution of

income and assets, shared decision-making, control of the business, and the receipt of fair value

for their contributions to the enterprise.  See, e.g., *Wilkes* v. *Springside Nursing Home, Inc.*, 370

Mass. 843, 850 (1976).  The law prohibits shareholders in a close corporation from acting out of

"avarice, expediency or self-interest" in derogation of their duty of loyalty to the corporation and

its other stockholders. *Donahue*, 367 Mass. at 593.

In the current matter, Trowt and Silva accuse each other of breaching the fiduciary duty

that shareholders in a close corporation owe to each other and the corporation.  The elements of

such a claim are: (1) the existence of a fiduciary duty, based upon the relationship of the parties;

(2) a breach of that duty; (3) damages; and (4) a causal connection between the breach of duty

and the damage suffered.  *Hanover Ins. Co.* v. *Sutton*, 43 Mass. App. Ct. 153, 164 (1989).  The

determination of whether a breach of fiduciary duty has occurred is a question of law for the

court, as is the remedy for such a breach.  See *Merola* v. *Exergen Corp.*, 423 Mass. 461, 461

(1996).  It is undisputed that Beverly Storage is a closely held corporation and that, as such,

Trowt and Silva owe each other and it a duty of utmost good faith and loyalty.  The only

12

questions left for the court to decide are who breached his fiduciary duty and who is entitled to

recover damages.

**Trowt's Claims:**

Through the evidence presented at trial, Trowt proved, by a preponderance of the

evidence, that Silva breached the fiduciary duty he owed him. In particular, Trowt proved the

following relevant facts: that, as of 1997, when Beverly Storage was incorporated, he and Silva

agreed to split profits on a fifty-fifty basis; that the only way Beverly Storage distributed profits

was through the payment of salaries; that Silva was solely responsible for the distribution of

profits; and that Silva unilaterally decreased his (Trowt's) share of the profits by decreasing his

(Trowt's) salary, and increasing his own salary. In paying himself a higher salary, i.e., splitting

profits at a seventy-five to twenty-five percent ratio in his favor, Silva clearly acted out of

"avarice" and "self-interest" in derogation of the fiduciary duty he owed Trowt. Consequently,

Trowt is entitled to judgment in his favor on Count II (breach of fiduciary duty).

As no contrary evidence was presented at trial on the issue of damages, as a starting

point, the court accepts the figures set forth in *The Parker Report*. From 2006 to November

2011, contrary to their agreement to split profits, i.e., to split salaries, on a fifty-fifty basis, Silva

paid himself $359,575.00 in salary while he paid Trowt only $141,250.00. A fifty-fifty split

would have resulted in Trowt and Silva each receiving $250,412.50. Thus, on Claim II (breach

of fiduciary duty), judgment shall enter in favor of Trowt in the amount of $109,162.50.

In addition, Trowt proved, by a preponderance of the evidence, that Silva breached the

fiduciary duty he owed Beverly Storage. In fact, the evidence presented reveals two different,

but related, bases for this claim. First, the evidence at trial demonstrated that, between 2006 and

2011, while he was solely responsible for all financial matters related to Beverly Storage's

13

operations, including payroll and accounts receivable, Silva siphoned revenues and skimmed

profits from the business.  Second, the evidence at trial demonstrated that, between this same

time frame, Silva opened numerous credit accounts in Beverly Storage's name, which he used

for his own personal use.  For example, the evidence showed Silva used Beverly Storage's

accounts to pay for dating websites, department store charges, grocery store charges, personal

gas purchases, automotive repairs, and office supplies used in connection with Clear Skys, his

personal travel business.  In engaging in this wrongdoing, Silva acted out of "avarice" and "self-

interest," contrary to the fiduciary duty he owed Beverly Storage.  Consequently, Trowt is

entitled to judgment in his favor on Count II (breach of fiduciary duty), as derivative of Beverly

Storage.

Again, as no contrary evidence was presented at trial on the issue of damages, as a

starting point, the court references *The Parker Report*.  If Silva had properly deposited all funds

he received into Beverly Storage's account for the period 2006 to November 2011, there would

have been an additional $140,815.20 in deposits.[5]  And, if Silva had not used Beverly Storage's

money for his own personal use, the company would also have had another $104,355.00 in

revenue.  Thus, on Claim I (breach of fiduciary duty) judgment shall enter in favor of Trowt,

derivative of Beverly Storage, in the amount of $245,170.20.

**Silva's Counterclaims:**

On Counterclaims I and II, judgment shall enter in favor of Trowt.  Silva failed to provide

sufficient evidence to demonstrate Trowt breached the fiduciary duty he owed him or Beverly

Storage.  These claims are premised upon several different theories.  First, Silva claims Trowt

---

[5]  *The Parker Report* states that, but for Silva's siphoning of revenue, there would have been an additional
$211,223.00 in deposits between 2006 and 2011.  This figure is based upon Parker's estimate that Silva was
skimming approximately fifteen percent from Beverly Storage's annual profits.  To be conservative, and to take into
account the fact that profits for 2013 did not actually show a nineteen present increase, as Parker predicted they
would, the court reduces the fifteen percent to ten percent.

breached his fiduciary duty by parking/storing Trowt Moving equipment at 145 Rear Hale Street

without paying rent. Second, he claims Trowt breached his fiduciary duty by leaving storage

trailers at the Manchester-by-the-Sea location without paying rent. Third, he claims Trowt

breached his duty by failing to pay rent for office space he uses at 145 Rear Hale Street.

These assertions fail with little analysis. At trial, Silva failed to establish that there was

ever any agreement between Trowt/Trowt Moving and Beverly Storage/Silva whereby Trowt

Moving would pay to park its equipment at 145 Rear Hale Street, pay to store trailers at the

Manchester-by-the-Sea location, or pay to rent office space at 145 Rear Hale Street. Rather, the

evidence established that Trowt Moving and Beverly Storage have a symbiotic relationship. And

that, to the extent Trowt Moving benefited from its relationship with Beverly Storage, Beverly

Storage equally benefited from that relationship. An example of this symbiotic relationship is

demonstrated by the fact that Beverly Storage does not even own a tractor to move its trailers

and thus, the only way the storage trailers can be moved from the warehouse in Beverly to the

location in Manchester-by-the-Sea is by using Trowt Moving's tractor.

Last, Silva argues that, in charging Trowt Moving customers overnight storage fees,

Trowt usurped a corporate opportunity from Beverly Storage. This claim appears to be premised

on the idea that, if Trowt did not allow its customers to store their items in its trucks overnight,

the customers would pay to store their items at Beverly Storage. This claim is without merit.

While it is true that a shareholder breaches "his fiduciary duty by acquiring or diverting a

corporate business opportunity for his personal profit[,]" the fact that the corporation would not

have been able to avail itself of that opportunity is a defense to such a claim. *Puritan Med. Ctr.,*

*Inc.* v. *Cashman*, 413 Mass. 167, 177-178 (1992). The evidence presented at trial establishes

that this was the case in the current matter. Even assuming Trowt Moving's customers would

choose to rent space at Beverly Storage, Beverly Storage did not have the manpower and

resources to unload and reload Trowt Moving's trucks all to obtain a one or two-day storage fee.[6]

## II.    Breach of Contract and Conversion

Trowt's claim for breach of contract (Count III) and his derivative claim for conversion

(Count IV) as well Silva's counterclaim for breach of contract (Counterclaim III) are

subsumed into the above analysis.  These claims assert the same theories of liability and request,

essentially, the same relief.  For this reason, the court need not analyze them in detail.

Nevertheless, the court notes the following: With respect to the breach of contract claims,

judgment shall enter in favor of Trowt.  The evidence presented at trial demonstrated the

following relevant facts: that Trowt and Silva had an agreement to split profits on a fifty-fifty

basis; that Trowt and Silva had an agreement whereby Silva agreed to be responsible for the

business's financial and administrative matters while Trowt served as the primary customer

contract; that Silva breached this agreement by paying himself a larger salary and

misappropriating funds belonging to Beverly Storage; and that Trowt and Beverly Storage were

damaged as a result of Silva's conduct.  Similarly, as to the conversion claim, judgment shall

enter in favor of Trowt, as the evidence presented at trial demonstrated that Silva

misappropriated money rightfully belonging to Trowt and Beverly Storage.

## III.    Silva's Third-Party Claim Against Trowt Moving for Breach of Contract

Silva asserts a third-party claim against Trowt Moving for breach of contract in

connection with Trowt Moving's failure to pay for parking its vehicles at 145 Rear Hale Street,

failing to pay to store its trailers at the Manchester-by-the-Sea location, and for failing to pay

rent for the use of office space at 145 Rear Hale Street.  This claim fails.  To establish a claim for

---

[6]  Even if Silva had presented sufficient evidence to factually support his claims for breach of fiduciary duty,
Counterclaim II, asserted derivatively on behalf of Beverly Storage, would still fail, as he did not send a demand
letter as Mass. R. Civ. P. 23.1 requires.

breach of contract, a plaintiff must demonstrate the following: (1) an agreement exists between

the plaintiff and the defendant; (2) the plaintiff fully performed his obligations under the

agreement; (3) the defendant breached the agreement; and (4) the plaintiff suffered damages as a

result of the breach. See *Singarella* v. *Boston*, 342 Mass. 385, 387 (1961); see also Richard W.

Bishop, Prima Facie Case § 2.1, at 13 (2005). At trial, Silva failed to provide sufficient evidence

to demonstrate there was ever any agreement between Trowt/Trowt Moving and Beverly

Storage/Silva regarding parking, rental payments, or storage fees.[7] Instead, the evidence

demonstrated that Trowt Moving and Beverly Storage worked in a symbiotic relationship where

each used the services and facilities of the other on an as needed basis with no formal

reimbursement. Judgment shall enter in favor of Trowt Moving on the third party claim for

breach of contract.

IV.    **Accounting**

Trowt has sought an accounting in this matter. An accounting is proper where a

violation of a fiduciary relationship has been established, but reconciling the rights and

obligations of the parties is so complicated that it cannot be conveniently accomplished by the

court. See *In re Evangelist*, 760 F.2d 27, 29-30 (1st Cir. 1985); *Crane* v. *Royster*, 255 Mass.

118, 120 (1926). This is not the case here. Instead, in this case, an accounting appears

unnecessary. The evidence demonstrates that Trowt is entitled to damages in the amount of

$109,162.50 for his direct claim of breach of fiduciary duty and in the amount of $245,170.20 for

the claim of breach of fiduciary duty, which he asserts derivatively on behalf of Beverly Storage.

---

[7] The only evidence Silva presented in support of the existence of some agreement between Trowt/Trowt Moving and Beverly Storage/Silva regarding the payment of rent are monthly statements, which include an attached transaction history. The court does not find these monthly statements to be credible. The statements identify a due date of December 8, 2006, but are themselves dated in 2011 around the time litigation in this matter began. Such discrepancies with the dates inevitably leads to the inference that these monthly statements are not accurate invoices from the time period in question but, rather, were created solely in connection with the present litigation.

## ORDER

Based upon the findings of fact and rulings of law made after trial on the merits, the court shall enter judgment in favor of Trowt as to all claims he asserts individually against Silva as well as to those he asserts derivatively on behalf of Beverly Storage. Judgment shall also enter in favor of Trowt as to all counterclaims Silva asserts individually against him as well as to those Silva asserts derivatively on behalf of Beverly Storage. Finally, judgment shall enter in favor of Trowt Moving as to Silva's third-party claim for breach of contract. Specifically with respect to Trowt's claim for breach of fiduciary duty, judgment shall enter against Silva in the amount of $109,162.50. And, as to the claim for breach of fiduciary duty Trowt asserts as derivative of Beverly Storage, judgment shall enter against Silva in the amount of $245,170.20. Judgment is **ORDERED** entered accordingly upon the docket by the clerk magistrate and notice shall be provided to the parties pursuant to Mass. R. Civ. P. 58.

SO ORDERED :

Date: October 31, 2014

Hon. Robert A. Cornetta
Justice

18